UNITED STATES of America,
Plaintiff–Appellee,

v.

John SHORTER, a/k/a Leon J. Johnson,
a/k/a Larry Johnson, and Jerre Tanksley,
Defendants–Appellants.

Nos. 94–1465 & 94–1663.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 30, 1994.

Decided May 4, 1995.

Andrew B. Baker, Jr. (argued), Philip P. Simon, Asst. U.S. Atty., Dyer, IN, David H. Miller, Asst. U.S. Atty., Robert Gevers, Fort Wayne, IN, for U.S.

Frank J. Gray (argued), Beckman, Lawson, Sandler, Snyder & Federoff, Fort Wayne, IN, for John Shorter.

Michael S. O'Connell (argued), O'Connell & Ryan, Chicago, IL, for Jerre Tanksley.

Before FLAUM, RIPPLE, and GARZA,* Circuit Judges.

GARZA, Circuit Judge.

John Shorter and Jerre Tanksley were convicted for offenses related to their membership in a cocaine distribution conspiracy.[1] Shorter appeals both his conviction and his sentence, and Tanksley appeals his sentence. We affirm Shorter's conviction and sentence, and we vacate and remand Tanksley's sentence.

## I

John Shorter and Verlyn Roux, according to Roux's testimony at trial, agreed to conduct a cocaine business in Fort Wayne, Indiana. Shorter functioned as the supplier, and Roux fronted the cocaine to distributors, collected the money, and forwarded it to Shorter.[2]

Roux met Tony Davidson and Jerre Tanksley and started fronting them cocaine. Tanksley's wife, Camilla Tanksley, helped him sell the cocaine supplied by Roux. Roux informed Davidson and Tanksley that Shorter was the supplier, and, when Shorter arrived in Fort Wayne, introduced Davidson and Tanksley to Shorter. Thereafter, if Davidson or Tanksley could not get cocaine from Roux, they obtained it from Shorter.

Shorter supplied Roux with cocaine by personally transporting it or sending it Federal Express from California. Shorter then picked up the proceeds from Roux in Fort Wayne or had Davidson or Roux wire the money to California via Western Union.

When Davidson was arrested for narcotics offenses, Tanksley persuaded his wife, Camilla, to use her house as bond for Davidson, telling her that he knew Davidson and his wife through Shorter. Roux later exited the distribution network for a period of time, during which Shorter supplied Davidson directly and Tanksley through Davidson. When Davidson exited the network for a short time, his wife, Francetta Davidson, sold cocaine for Shorter. Francetta showed Direcia Martin, Shorter's girlfriend, how to cut up the crack cocaine and told her that Shorter was sending the cocaine supply from California. Davidson returned to Fort Wayne and restarted selling cocaine for Shorter, but Martin handled the money and deliveries to the Davidsons. Roux also rejoined the network.

Shorter, Tanksley, and Roux were indicted on the basis of their cocaine distribution activities. The grand jury charged Shorter with 1) conspiracy to distribute in excess of 50 grams of cocaine base, in violation of 21 U.S.C. § 846; 2) conspiracy to conduct interstate wire transfers involving proceeds of the distribution of crack cocaine, in violation of 18 U.S.C. § 371; and 3) conducting an interstate wire transfer involving proceeds of the distribution of crack cocaine, in violation of 18 U.S.C. § 1956(a)(1)(A)(i). The grand jury charged Roux with the conspiracy and money laundering counts listed above, and it charged Tanksley with the cocaine conspiracy count and perjury, in violation of 18 U.S.C. § 1623(a).

Shorter filed a motion for severance of his trial from that of Roux and Tanksley, which the district court denied. A month later, Roux pled guilty pursuant to a plea agreement. A few days before trial, Shorter wrote a letter to Roux suggesting that Roux should not implicate Shorter when he testified. The letter included statements such as "don't end my life by saying what they think is true," "let me fight them without you helping them," "If you don't remember everything or if you don't see things that way they do what can they do," "you can tell them what you know without giving them nothing," "you can help me by not hurting me," and "we are all hoping that you haven't given a

---

* Emilio M. Garza, Circuit Judge for the United States Court of Appeals for the Fifth Circuit, sitting by designation.

1. Tanksley was also convicted of perjury, but he does not contest this conviction on appeal.

2. A distributor "fronts" drugs by furnishing them to sellers on a credit basis.

statement yet or if so that the statement doesn't hurt me."

Shorter renewed his motion for severance before trial, which the district court denied. On the second day of trial, Tanksley pled guilty to the cocaine conspiracy and perjury counts. At the close of the Government's case, Shorter moved for a judgment of acquittal, which the district court denied.[3] Shorter was convicted on all three counts. After the verdict, Shorter filed motions for judgment of acquittal both through his counsel and *pro se;* the district court denied both motions.

At the first sentencing hearing, the district court determined that Shorter was responsible for 2.15 kilograms of crack cocaine and that he was eligible for a four-level enhancement under § 3B1.1(a) of the Sentencing Guidelines as an organizer or leader of criminal activity involving five or more participants, *see* United States Sentencing Commission, *Guidelines Manual* § 3B1.1(a) (Nov. 1992). Two months later, Tanksley's counsel moved to withdraw. At the second sentencing hearing, the district court, without ruling on the motion to withdraw, attributed 1,800 grams of cocaine base to Tanksley, assessed a two-level enhancement for the perjury, and rejected Tanksley's argument that his offense level should be reduced because he accepted responsibility for his actions and because he was only a minor participant in the conspiracy.

Shorter was ultimately sentenced to 360 months' imprisonment and fined $10,000.[4] Tanksley was ultimately sentenced to 262 months' imprisonment.[5]

## II

### A

■ Tanksley contends that he should be resentenced because his attorney had a conflict of interest that the district court failed to address. "A criminal defendant is entitled to counsel whose undivided loyalties lie with his client." *United States v. Ellison,* 798 F.2d 1102, 1107 (7th Cir.1986), *cert. denied,* 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987); *see also Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981) (noting a "right to representation that is free from conflicts of interest"); *United States v. Ziegenhagen,* 890 F.2d 937, 939 (7th Cir.1989) (noting that Sixth Amendment "guarantee includes representation that is free of any conflict of interest with counsel").

At sentencing, Tanksley's counsel stated that Tanksley had accused her of forcing him to plead guilty.[6] In a motion to withdraw, the attorney also asserted that Tanksley was making false statements to the court.[7] Tanksley argues that counsel's action demonstrated a conflict of interest which prevented the attorney from representing him at sentencing with undivided loyalties. We agree. When a defendant accuses his counsel of improper behavior and the counsel disputes

---

3. Shorter did not renew his acquittal motion at the close of the evidence.

4. The sentence reflected an offense level of 42, criminal history category II, and a sentencing range of 360 months to life.

5. The sentence reflected an offense level of 38, criminal history category II, and a sentencing range of 262 to 327 months.

6. The following discussion occurred:
 THE COURT: ... I'm prepared to hear anything that you or your client wish to present on his behalf, Ms. Wagoner.
 COUNSEL: This is sort of a difficult situation for me, Your Honor, because now my client apparently is taking the position that I forced him to plead guilty, which is different from my recollection of how that came about.

7. The motion included the following statements by Tanksley's counsel:
 1. I have received a copy of correspondence which contains grossly untrue and misleading statements....
 2. ... [Regarding Tanksley's guilty plea,] I had nothing to do with his change of heart nor any discussions with him regarding his change of plea until he so indicated to me....

 . . . . .

 6. At this point, I strongly feel Mr. Tanksley is doing nothing more than attempting to cloud the record and, while I normally would not divulge such confidences as this affidavit has divulged, I feel the same is necessary in order to preserve the integrity of the court proceedings in which Mr. Tanksley participated at his own request.

his client's accusations, an actual conflict of interest results because "any contention by counsel that defendant's allegations were not true would (and did) contradict his client." *Ellison*, 798 F.2d at 1107.

■ Because the district court failed to conduct a hearing and determine the impact of the conflict of interest, *see Dently v. Lane*, 665 F.2d 113, 117 (7th Cir.1981) (requiring evidentiary hearing on issue of conflict of interest), we will presume that the conflict prejudiced Tanksley if he has shown a possibility of prejudice. *Ziegenhagen*, 890 F.2d at 940 (explaining that reviewing court will presume prejudice where defendant shows possible prejudice and trial court fails to conduct inquiry into conflict).[8] Tanksley argues that he was prejudiced because his counsel failed to argue for a departure outside the Sentencing Guidelines' mandatory range, thereby depriving him of the chance that the district court may have sentenced him to a lesser term of imprisonment. Tanksley has there-

fore shown the possibility that the conflict of interest prejudiced him, and we therefore presume that it did. *See Holloway v. Arkansas*, 435 U.S. 475, 484–91, 98 S.Ct. 1173, 1178–82, 55 L.Ed.2d 426 (1978) (presuming prejudice where conflict of interest exists); *Ellison*, 798 F.2d at 1107 ("This presumption of prejudice is necessary because a true conflict of interest forecloses the use of certain strategies and thus the effect is difficult if not impossible to measure.").[9] Accordingly, we vacate Tanksley's sentence and remand for resentencing with new counsel.[10] *See Wood*, 450 U.S. at 274, 101 S.Ct. at 1104 (requiring the trial court to "hold a new [proceeding] that is untainted by a legal representative serving conflicting interests").[11]

**B**

**1**

■ Shorter contends that the evidence was insufficient to support his cocaine con-

8. Therefore, *United States v. Durman*, 30 F.3d 803, 813 (7th Cir.1994) (applying abuse of discretion standard and entitling defendant to new counsel only after demonstration of total breakdown of communication between defendant and counsel), *cert. denied*, —— U.S. ——, 115 S.Ct. 921, 130 L.Ed.2d 801 (1995), does not apply; in *Durman*, the trial court did conduct a hearing concerning the alleged conflict of interest.

9. Because we cannot conclude that the conflict of interest had no consequences, *United States v. Litchfield*, 959 F.2d 1514 (10th Cir.1992), does not apply. *Id.* at 1517 (finding no actual conflict of interest where counsel merely informed court of belief that defendant might testify falsely, but no other consequences of alleged conflict resulted).

10. Because we cannot find any indication in the record that Tanksley waived the conflict, we remand for resentencing rather than an evidentiary hearing on the issue of waiver. *See Ziegenhagen*, 890 F.2d at 941 ("An actual conflict of interest between retained counsel and a represented party requires an evidentiary hearing to determine whether or not the represented party made a knowing and intelligent waiver of the conflict."); *cf. Ellison*, 798 F.2d at 1108 (remanding for new proceeding because "[t]here is no indication in the record that the trial judge considered the propriety of disqualification or advised defendant of the conflict").

11. Because we vacate Tanksley's sentence, we do not address his challenges to 1) the district court's refusal to consider him a "minor partici-

pant" under U.S.S.G. § 3B1.2 of the Sentencing Guidelines, and 2) the quantity of drugs determined by the district court as attributable to him.

We note also that both Tanksley and Shorter argued that the Guidelines violated the Fifth Amendment's guarantee of equal protection because the higher sentencing ranges for cocaine base versus cocaine powder impact blacks more severely than whites. Their argument has no merit; this Court and every other Circuit that has addressed this argument has rejected it. *See, e.g., United States v. Scott*, 19 F.3d 1238, 1246 (7th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 163, 130 L.Ed.2d 101 (1994); *United States v. Chandler*, 996 F.2d 917, 918 (7th Cir.1993); *United States v. Lawrence*, 951 F.2d 751 (7th Cir.1991); *see also United States v. Clary*, 34 F.3d 709 (8th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1172, 130 L.Ed.2d 1126 (1995); *United States v. Stevens*, 19 F.3d 93, 97 (2d Cir.1994); *United States v. Frazier*, 981 F.2d 92, 95 (3d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 1661, 123 L.Ed.2d 279 (1993); *United States v. D'Anjou*, 16 F.3d 604, 612 (4th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 2754, 129 L.Ed.2d 871 (1994); *United States v. Galloway*, 951 F.2d 64, 65–66 (5th Cir.1992); *United States v. Reece*, 994 F.2d 277, 278–79 (6th Cir.1993); *United States v. Harding*, 971 F.2d 410, 413–14 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1025, 122 L.Ed.2d 170 (1993); *United States v. Turner*, 928 F.2d 956, 959–60 (10th Cir.), *cert. denied*, 502 U.S. 881, 112 S.Ct. 230, 116 L.Ed.2d 187 (1991); *United States v. Solomon*, 848 F.2d 156, 157–58 (11th Cir.1988); *United States v. Cyrus*, 890 F.2d 1245, 1248 (D.C.Cir.1989).

spiracy conviction because the Government did not prove the single cocaine conspiracy with which he was charged, but instead proved only multiple independent conspiracies. A defendant challenging the sufficiency of the evidence bears a heavy burden. *United States v. Byerley*, 999 F.2d 231, 234 (7th Cir.1993). We review the evidence "and all the reasonable inferences that can be drawn from the evidence" in a light most favorable to the government, *United States v. Goines*, 988 F.2d 750, 758 (7th Cir.), *cert. denied*, ── U.S. ──, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993); *see also United States v. Towers*, 775 F.2d 184, 189 (7th Cir.1985) ("A reviewing court determining whether the evidence established a single conspiracy or multiple conspiracies must consider the evidence in the light most favorable to the government."), and we neither weigh the evidence nor evaluate the credibility of the witnesses. *Byerley,* 999 F.2d at 234. "Whether the evidence at trial established a single conspiracy is a question of fact for the jury." *United States v. Sababu*, 891 F.2d 1308, 1322 (7th Cir.1989). Accordingly, we will reject a sufficiency challenge if any rational jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Montgomery*, 990 F.2d 266, 268 (7th Cir.1993). Moreover, we allow circumstantial evidence to support the jury's verdict. *Goines*, 988 F.2d at 758; *Byerley*, 999 F.2d at 234.

 "It is the nature and scope of the agreement that is the determinative factor in distinguishing between single and multiple conspiracies." *Sababu*, 891 F.2d at 1322; *United States v. Varelli*, 407 F.2d 735, 741 (7th Cir.1969) ("The agreement is the primary element of a conspiracy."). There is a distinction between several similar purposes and one common purpose. *Kotteakos v. United States*, 328 U.S. 750, 769, 66 S.Ct. 1239, 1250, 90 L.Ed. 1557 (1946) (finding error where the trial court "confuse[d] the common purpose of a single enterprise with the several, though similar, purposes of numerous separate adventures of like charac-

ter"). "If the defendants joined together to further one common design or purpose, a single conspiracy exists." *United States v. Marshall*, 985 F.2d 901, 907 (7th Cir.), *cert. denied*, ── U.S. ──, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993).[12] In contrast, if there are distinct illegal ends and no overlapping interest between parties, there are separate conspiracies. *Sababu*, 891 F.2d at 1322 ("Separate conspiracies exist when each of the conspirators' agreements has its own end, and each constitutes an end in itself."); *Varelli*, 407 F.2d at 742 (discussing *Kotteakos* as finding multiple conspiracies because "each separate agreement had its own distinct, illegal end" and "[e]xcept for ... the common figure, no conspirator was interested in whether any [agreement] except his own went through").

The evidence indicated that Shorter supplied cocaine to Roux, and Roux fronted it to Davidson, Tanksley, and others. Roux testified that both he and Shorter supplied Tanksley with cocaine. Camilla Tanksley testified that Shorter and Roux criticized Tanksley's handling of the proceeds of his sales. Camilla also distributed cocaine for her husband, and used her house as bond for Davidson when he was arrested. Davidson testified that after Roux left Fort Wayne for a period of time, Davidson took his place in the organization. Davidson also testified that Shorter delivered crack cocaine directly to Tanksley or he directed Davidson to deliver the cocaine. When Davidson left Fort Wayne temporarily, his wife and Direcia Martin handled his functions in the organization. Martin testified that Shorter asked her to take over handling the money from the sales of crack cocaine.

 Shorter challenges the jury's finding on several grounds. First, he argues that the "first" conspiracy ended when Roux left Fort Wayne. Although one common participant is not necessarily enough to prove a

**12.** *See also United States v. Andrus,* 775 F.2d 825, 840 (7th Cir.1985) ("If the defendants 'knowingly embraced a common criminal objective,' then a single conspiracy is proved." (quoting *United States v. Ras,* 713 F.2d 311, 314 (7th Cir.1983));

*Varelli,* 407 F.2d at 742 ("If there is one overall agreement among the various parties to perform different functions in order to carry out the objectives of the conspiracy, the agreement among all the parties constitutes a single conspiracy.").

single conspiracy,[13] parties can join or leave the conspiracy without terminating the overall conspiracy.[14] Because other participants assumed Roux's function, his departure did not terminate the conspiracy. Shorter argues next that a single conspiracy did not exist because certain members did not know each other's identities. A conspiracy can exist, however, even if each participant does not know the identity of the others or does not participate in all the events.[15] All that is required is that a participant know of the others' existence and that their activities further the conspiracy's ends.[16] Consequently, a single conspiracy can continue even though aspects vary by participant and over time. *See United States v. Townsend,* 924 F.2d 1385, 1390 (7th Cir.1991) ("To join a conspiracy, then, is to join an agreement, rather than a group."); *United States v. Ras,* 713 F.2d 311, 314 (7th Cir.1983) (holding that the vari-

ous functions of the parties and the relative magnitude of their roles were not the "benchmarks against which [courts] judge a conspiratorial enterprise," and looking instead to "whether these defendants knowingly embraced a common criminal objective"). As detailed above, the evidence was more than sufficient to show a common, continuing purpose to distribute cocaine, thereby proving the single conspiracy for which Shorter was convicted. Indeed, the evidence described a "classic chain conspiracy," which we have previously held to constitute a single conspiracy. *Andrus,* 775 F.2d at 840–41 (describing drug organization as presenting "the classic chain conspiracy").

 Because the Government proved a single conspiracy, the following of Shorter's additional claims have no merit: 1) That a variance existed between the indictment and the evidence,[17] 2) that the district court

---

**13.** *Kotteakos,* 328 U.S. at 773, 66 S.Ct. at 1252 (rejecting finding of single conspiracy where "the only nexus among the [multiple conspiracies] lies in the fact that one man participated in all"); *United States v. Sophie,* 900 F.2d 1064, 1080 (7th Cir.) ("A single conspiracy does not exist just because a number of people committed illegal acts with the same person."), *cert. denied,* 498 U.S. 843, 111 S.Ct. 124, 112 L.Ed.2d 92 (1990).

**14.** *See Marshall,* 985 F.2d at 907 ("As long as the conspiracy continues toward its goal to achieve a common objective, it remains a single conspiracy despite the fact that participants may change or perform different roles or functions at different times."); *Sophie,* 900 F.2d at 1081–82 (rejecting argument that evidence showed multiple conspiracies merely because members changed over time); *Sababu,* 891 F.2d at 1322 ("The key question is not, as the defendants assert, whether different parties have joined the conspiracy, but instead whether the conspirators are performing different functions in pursuit of common criminal objectives."); *cf. Varelli,* 407 F.2d at 742 ("The distinction must be made between separate conspiracies, where certain parties are common to all and one overall continuing conspiracy with various parties joining and terminating their relationship at different times.").

**15.** *Sophie,* 900 F.2d at 1080–81 ("[T]o be a member of a conspiracy, a person does not need to know or participate in every detail of the conspiracy, or to know all the conspiracy's members."); *United States v. Davis,* 838 F.2d 909, 913 (7th Cir.1988) ("[T]he parties involved in a conspiracy do not have to know the other conspirators or participate in every aspect of the conspiracy."); *Andrus,* 775 F.2d at 840 ("That each defendant did not know of each other defen-

dant's identity was insignificant, as long as they knew of each other's existence."); *Varelli,* 407 F.2d at 742 ("While the parties to the agreement must know of each other's existence, they need not know each other's identity nor need there be direct contact.").

**16.** *Byerley,* 999 F.2d at 234 ("As long as the conspiracy continues and its goal is to achieve a common objective, it is sufficient that a party have reason to know that others were involved in the conspiracy."); *Townsend,* 924 F.2d at 1391 ("[T]he liability of members of the distribution chain is predicated upon the notion that participants at different levels in the chain know that the success of those at each level hinges upon the success of the others and therefore cooperate for their mutual benefit."); *United States v. Boucher,* 796 F.2d 972, 974 (7th Cir.1986) ("In order to show that a single conspiracy existed, the government must establish that the parties to the agreement were aware that others were participating in the scheme.").

**17.** "In nearly every conspiracy case the claim is made that a variance exists because multiple conspiracies were shown." *United States v. Abraham,* 541 F.2d 1234, 1237 (7th Cir.1976), *cert. denied,* 429 U.S. 1102, 97 S.Ct. 1128, 51 L.Ed.2d 553 (1977). "A variance occurs only when the proof adduced at trial is not enough for a reasonable jury to find beyond a reasonable doubt that a single conspiracy existed, but rather, that multiple conspiracies existed." *United States v. Severson,* 3 F.3d 1005, 1009 (7th Cir. 1993); *see also Marshall,* 985 F.2d at 906 ("A variance arises when the facts provided by the government at trial differed from those contained in the indictment."). Accordingly, the variance

should have granted Shorter's motion for severance of his trial from that of other conspirators in the purported multiple conspiracies,[18] and 3) that the district court should not have applied § 3B1.1(a) of the Sentencing Guidelines in sentencing Shorter for his role as the leader of a group of five or more persons.[19] *See Nava–Salazar*, 30 F.3d at 797 ("Our holding that the jury justifiably found a single conspiracy also is dispositive of the appellants' ancillary arguments based on their multiple conspiracy theory.").

 Shorter also argues that, even if a single conspiracy was proven, the district court should have instructed the jury on multiple conspiracies as a theory of the defense. A court's rejection of an insufficiency claim does not necessarily rule out its consideration of a defendant's claim that the court should have instructed about multiple conspiracies if that theory had some support in the evidence presented at trial. *United States v. Briscoe*, 896 F.2d 1476, 1512–13 (7th Cir.), *cert. denied*, 498 U.S. 863, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990); *Marshall*, 985 F.2d at 907 ("The issue is whether the evidence warranted an instruction on multiple conspiracies."). Shorter did not tender a multiple conspiracy instruction; therefore,

we review his claim only for plain error. *United States v. Johnson*, 32 F.3d 265 (7th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1172, 130 L.Ed.2d 1125 (1995); *cf. United States v. Olano*, —— U.S. ——, ——, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993) (" 'Plain' is synonymous with 'clear' or, equivalently, 'obvious.' ").

After reviewing the record, we find no support for Shorter's multiple conspiracy theory. All the evidence pertained to the single cocaine distribution conspiracy for which Shorter was convicted. Finding support for multiple conspiracies requires us to take a warped view of the evidence, and we decline to perform such a contortionist exercise. *See Briscoe*, 896 F.2d at 1514 (rejecting jury instruction challenge because multiple conspiracies not supported in record and "based on a tortured view of the evidence presented at trial").

 Indeed, even if the evidence supported a multiple conspiracy instruction, the failure to give such an instruction does not constitute plain error for two reasons. First, the conspiracy instruction given explicitly required the jury to find that Shorter was guilty of the conspiracy charged and not another.[20] Second, because Shorter was the

---

claim is equivalent to a claim of insufficient evidence, *see United States v. Nava–Salazar*, 30 F.3d 788, 796 (7th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 515, 130 L.Ed.2d 421 (1994); *Townsend*, 924 F.2d at 1389, and we have already rejected Shorter's sufficiency challenge. Moreover, "a conviction must be reversed [only] if the variance between the indictment and the proof affects the substantial rights of the parties." *Marshall*, 985 F.2d at 906. Even if a variance existed, Shorter could show no prejudice because he was a member of each conspiracy he alleges. *See id.* at 907 (explaining that variance between multiple and single conspiracies did not prejudice defendants who were members of both conspiracies).

**18.** *See Andrus*, 775 F.2d at 846 ("Since we have already concluded that a single conspiracy was proved, jury confusion did not justify severance."). Because there was only one conspiracy, no spillover of evidence occurred because all the conspiracy evidence was admissible against Shorter. *See Donovan*, 24 F.3d at 915 ("What [defendants] claim to be spillover of evidence offered against other defendants is simply evidence of the single conspiracy of which they were all convicted. They can point to no evidence offered against a codefendant that does

not relate to the single conspiracy, much less explain how such evidence even slightly prejudiced them."); *cf. Zafiro v. United States*, —— U.S. ——, ——, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993) (explaining that one situation in which severance may be appropriate is when evidence probative of a defendant's guilt is admissible only against a codefendant).

**19.** In his brief, Shorter challenged only the element of § 3B1.1(a) requiring a group of five or more persons. Our holding that a single conspiracy existed and included at least Shorter, Davidson, Roux, Tanksley, Camilla Tanksley, Francetta Davidson, Martin, and others therefore disposes of this contention. In a Rule 28(j) letter, however, Shorter offered authority challenging the leader or organizer element of § 3B1.1(a). Because Shorter did not raise this argument in his brief, he has waived it, and we do not address the argument.

**20.** The district court gave the following instruction:

In order to establish the offense of conspiracy the government must prove the following elements:

hub of the distribution network, harm from the lack of a multiple conspiracy instruction would be negligible at best. *Johnson*, 32 F.3d at 268 ("There is little, if any, need for a multiple conspiracy instruction when the defendants are at the hub of the various possible agreements.").

2

■ Shorter also challenges other aspects of his trial and conviction. Shorter first contends that the evidence was insufficient to support his conviction on the money laundering counts. To obtain a conviction for money laundering under 18 U.S.C. § 1956(a)(1), the government was required to prove that Shorter:

(1) knowingly conducted a financial transaction; (2) which he knew involved funds derived from criminal activity and which in fact involved the proceeds of drug distribution; (3) with the intent to promote 'specified unlawful activity' ... or, with knowledge that the transaction was designed to

1. Two or more person[s] in some way or manner came to a mutual understanding to try to accomplish a common and unlawful plan; that is, to distribute cocaine base crack, and
2. The defendant knowingly and intentionally became a member of the conspiracy.
A conspiracy may be established even if its purpose was not accomplished.
In your consideration of the conspiracy offense, as alleged in Count I of the indictment, you should first determine, from all the testimony and evidence in the case, whether the conspiracy existed as charged. In determining whether the alleged conspiracy existed, you may consider the action and statements of all the alleged participants. The agreement may be inferred from all the circumstances and conduct of all the alleged participants, even though the participant is not a named defendant in the indictment. If you find that no conspiracy exi[s]ted, then you must find the defendant not guilty.
If you conclude that a conspiracy did exist as alleged, you should next determine whether or not the defendant knowingly and intentionally became a member of such conspiracy....
To be a member of the conspiracy the defendant need not join at the beginning or know all the members or the means by which the purpose was to be accomplished. The government must prove beyond a reasonable doubt from the defendant's own acts and statements that he was aware of the common purpose and was a willing participant.

disguise the nature or source of the proceeds.

*United States v. Brown*, 944 F.2d 1377, 1387 (7th Cir.1991); *see also United States v. Jackson*, 935 F.2d 832, 838 (7th Cir.1991) (enumerating elements of § 1956(a)(1)). Shorter challenges the intent elements, that is, that he knew that the source of the money was cocaine sales.

■ Roux testified that he either gave the proceeds of the crack cocaine sales directly to Shorter or sent it by Western Union as directed by Shorter. Western Union records show several wire transfers by Roux to Shorter. Roux also testified that Shorter supplied the cocaine to Roux and others. Because this evidence supports the inference that Shorter knew of the illegal source of the funds, it was sufficient to sustain the conviction. *See Brown*, 944 F.2d at 1387–88 (rejecting challenge to sufficiency because evidence supported inference that defendant knew source of proceeds was drug transactions); *Jackson*, 935 F.2d at 839–40 (explaining that statute requires only that govern-

In several other cases, we have approved of instructions similar to those given in this case. *See, e.g., Nava–Salazar*, 30 F.3d at 797 (affirming district court's refusal to instruct the jury not to consider unrelated conspiracies because instructions properly explained how jury should evaluate and apply conspiracy evidence); *United States v. Soto–Rodriguez*, 7 F.3d 96, 101 (7th Cir.1993) (affirming conviction when instructions sufficiently instruct the jury that it must find the defendant a member of the conspiracy charged and not another); *Severson*, 3 F.3d at 1011 (rejecting multiple conspiracy "theory of defense instruction" argument because "[t]he jury was instructed on all the elements of the crime charged in the indictment, and was also instructed that the evidence must be weighed against each individual defendant, and that each defendant was guilty only if the evidence proved beyond a reasonable doubt that he committed the crime"); *United States v. Auerbach*, 913 F.2d 407, 417 (7th Cir.1990) (explaining that instructions similar to these are "sufficient to inform the jury that, in order to convict the defendant of an alleged conspiracy, it must find that he was a member of that conspiracy and not another"); *Briscoe*, 896 F.2d at 1514 (rejecting jury instruction argument concerning multiple conspiracies because instructions clearly required jury to first find single conspiracy before considering evidence concerning one defendant against other defendants).

ment prove funds involved were derived at least in part from "specified unlawful activities").

■■■■ Next, Shorter argues that the district court erred in refusing to grant him a severance.

> The problems arising out of such motion[s] for separate trial frequently confront the courts in conspiracy cases, where the general rule has evolved that persons jointly indicted should be tried together, particularly so where the indictment charges a conspiracy or a crime which may be proved against all the defendants by the same evidence and which results from the same or a similar series of acts.

*United States v. Echeles,* 352 F.2d 892, 896 (7th Cir.1965) (citations omitted). "There is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States,* —— U.S. ——, ——, 113 S.Ct. 933, 937, 122 L.Ed.2d 317 (1993).[21] Reviewing courts defer to the trial court's evaluation of the need for severance. *See Zafiro,* —— U.S. at ——, 113 S.Ct. at 938 (explaining that even a showing of prejudice does not mandate severance and "leav[ing] the tailoring of relief to be granted, if any to the district court's sound discretion").[22] A defendant can obtain a severance only by showing that a fair trial could not be had jointly. *Novak,* 870 F.2d at 1354. That a separate trial may create a better chance of acquittal does not warrant severance. *Zafiro,* —— U.S. at ——, 113 S.Ct. at 938; *Novak,* 870 F.2d at 1354; *Oxford,* 735 F.2d at 279. "In ruling on a motion for severance, the district court must balance the benefit of judicial efficiency in a joint trial with the risk of prejudice to the defendant." *United*

*States v. Donovan,* 24 F.3d 908, 914–15 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 269, 130 L.Ed.2d 187 (1994); *see also United States v. McAnderson,* 914 F.2d 934, 949 (7th Cir.1990) (explaining that district courts should "evaluate the risk to the defendant against the benefit to the system"). Therefore, we approve of severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro,* —— U.S. at ——, 113 S.Ct. at 938.

■■■■ Shorter argues that the district court should have granted him a severance because his codefendant, Tanksley, was charged with perjury. He contends that the jury could have inferred that he also was a liar. Shorter appears to argue first that perjury *per se* should be tried in a separate trial. Perjury counts may be tried with other offenses, however, especially if the perjury relates to the conduct underlying the other charges. *United States v. Curry,* 977 F.2d 1042, 1050 (7th Cir.1992) ("[P]erjury counts may be considered part of the same series of acts or transactions as the underlying conduct which was misrepresented."), *cert. denied,* —— U.S. ——, 113 S.Ct. 1357, 122 L.Ed.2d 737 (1993); *United States v. Braasch,* 505 F.2d 139, 150 (7th Cir.1974) (upholding trial of perjury counts with conspiracy counts), *cert. denied,* 421 U.S. 910, 95 S.Ct. 1562, 43 L.Ed.2d 775 (1975); *United States v. Isaacs,* 493 F.2d 1124, 1160 (7th Cir.1973) (approving trial of perjury count and conspiracy counts in same proceeding), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974).

---

**21.** *See also United States v. Bond,* 847 F.2d 1233, 1240 (7th Cir.1988) (noting that "a joint trial of co-conspirators is presumptively appropriate"); *United States v. Velasquez,* 772 F.2d 1348, 1352 (7th Cir.1985) ("When a group of people are charged with participating in the same crime, they ordinarily are tried together even if the evidence is stronger against one or some than against others. The danger of prejudice to the least guilty, or perhaps prejudice to all from the sheer confusion of a multidefendant trial, is in all but the most unusual circumstances considered outweighed by the economies of a single trial in which all facets of the crime can be explored

once and for all."), *cert. denied,* 475 U.S. 1021, 106 S.Ct. 1211, 89 L.Ed.2d 323 (1986).

**22.** *See also United States v. Oxford,* 735 F.2d 276, 279 (7th Cir.1984) ("Motions for severance are committed to the sound discretion of the trial court, and will be overturned only upon a showing of abuse of discretion."); *United States v. Novak,* 870 F.2d 1345, 1354 (7th Cir.1989) ("We have made it clear that we will not overturn the denial of a defendant's motion for severance except upon a finding that the trial judge abused his discretion.").

Shorter also claims that the jury could have inferred his guilt due to the perjury evidence against Tanksley. Such "spillover" claims alone do not warrant severance. *See Oxford*, 735 F.2d at 280 (rejecting argument that "guilt by association" warranted severance). Also, as we have already explained, the conspiracy evidence against Shorter was sufficient without the alleged perjury implication. *See United States v. Moya–Gomez*, 860 F.2d 706, 754 (7th Cir.1988) (refusing to overturn denial of severance on argument of spillover of evidence where other evidence against defendant was sufficient on its own), *cert. denied*, 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989). Accordingly, we hold that the district court did not abuse its discretion in refusing to sever his trial.[23]

■ Shorter next argues that the district court should have ordered a mistrial when Tanksley plead guilty, and that the district court's cautionary instruction was insufficient to dispel the prejudice created by Tanksley's guilty plea. Because Shorter failed to object at trial, we review the district court's decision for plain error. *United States v. Lashmett*, 965 F.2d 179, 185 (7th Cir.1992). "[A] co-defendant's entry of a guilty plea during trial is not in and of itself prejudicial to the remaining defendant(s)." *United States v. Martin*, 964 F.2d 714, 717 (7th Cir.1992); *see also United States v. McGrath*, 811 F.2d 1022, 1024 (7th Cir.1987) (allowing introduction of evidence of codefendant's guilty plea and explaining that "a co-conspirator's or co-defendant's entry of a guilty plea, even on occasion before a jury, was not prejudicial"). Moreover, evidence of the guilty plea is admissible,[24] and allowing the codefendant's later testimony does not require reversal.[25]

"At the appellate level, an examination of the lower court's cautionary instructions concerning the use of the testimony and the evidence of the guilty plea·is the key to determining whether a constitutional violation occurred." *Thomas*, 774 F.2d at 809. Although the trial court did give a cautionary instruction at the end of the evidence, *see Martin*,·964 F.2d at 717 (discussing cautionary instruction that jury may not consider codefendant's plea as evidence against defendant), Shorter argues that the trial court plainly erred in not giving an interim instruction immediately after the jury learned of Tanksley's guilty plea. We review the district court's actions for plain error because Shorter did not object at trial. *Oxford*, 735 F.2d at 280 (reviewing prejudice claim for plain error because defendant made no objection at trial, and explaining that "[p]lain error appears only when the evidence is extremely damaging, the need for the instruction is obvious, and the failure to give it is so prejudicial as to affect the substantial rights of the accused"); *cf. United States v. Olano*, ⸺ U.S. ⸺, ⸺, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993) ("'Plain' is synonymous with 'clear' or, equivalently, 'obvious.'"). A failure to make an interim instruction is not per se plain error. *Oxford*, 735 F.2d at 280 (refusing to require interim instructions in all cases, but instead viewing necessity of interim instructions on the facts of each case). Moreover, we assume that any cautionary instruction cures potential prejudice, absent a showing otherwise. *Martin*, 964 F.2d at 717.[26] Shorter has failed to make such a showing. *See Martin*, 964 F.2d at 717 (rejecting mistrial claim where appellant failed

---

23. Shorter also argues that the district court should have· severed his trial because of Tanksley's guilty plea. "We will limit our review of the trial court's decision to the record at the time that the motion is made." *Oxford*, 735 F.2d at 279. Tanksley plead guilty *after* Shorter's motion for severance. Therefore, it is irrelevant to our review of the district court's decision.

24. *See United States v. Sanders*, 893 F.2d 133, 136 (7th Cir.) (explaining that admission of evidence regarding codefendant's guilty plea was not per se an abuse of discretion), *cert. denied*, 496 U.S. 907, 110 S.Ct. 2591, 110 L.Ed.2d 272 (1990); *United States v. Davis*, 838 F.2d 909, 918 (7th Cir.1988) (The government may elicit evi-

dence of a guilty plea to "blunt the impact of crossexamination and to avoid the impression that the government was concealing the information.").

25. *See United States v. Thomas*, 774 F.2d 807, 809 (7th Cir.1985) (explaining that admission of testimony of codefendant who had plead guilty was not reversible error), *cert. denied*, 475 U.S. 1024, 106 S.Ct. 1218, 89 L.Ed.2d 329 (1986).

26. Indeed, there may be no plain error even if no instruction is given. *See McGrath*, 811 F.2d at 1024.

to show that the guilty plea influenced jury's determination of defendant's guilt). Consequently, the district court's limiting instruction eliminated any prejudice to Shorter, and the district court did not err in refusing to order a mistrial.[27]

■ Shorter next argues that the district court should not have admitted a letter written by him and sent to Roux. He contends that the letter was inadmissible hearsay or that the prejudicial effect substantially outweighed the letter's probative value.[28] We defer to the trial court's evidentiary rulings absent an abuse of discretion. *United States v. Dominguez*, 992 F.2d 678, 680 (7th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 250, 126 L.Ed.2d 203 (1993); *United States v. Lennartz*, 948 F.2d 363, 366 (7th Cir.1991); *United States v. Shukitis*, 877 F.2d 1322, 1327 (7th Cir.1989). "Appellants who challenge evidentiary rulings of the district court are like rich men who wish to enter the Kingdom; their prospects compare with those of camels who wish to pass through the eye of a needle." *United States v. Glecier*, 923 F.2d 496, 503 (7th Cir.), *cert. denied,* 502 U.S. 810, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991).

The letter was admissible on two grounds. First, it qualifies as an admission and is thus not hearsay. *United States v. Porter*, 544 F.2d 936, 938 (8th Cir.1976) (admitting noncustodial statements by defendant as admissions of a party-opponent because Fifth Amendment privilege not implicated). Second, it was independently admissible as evidence of Shorter's consciousness of guilt. *See United States v. Marks*, 816 F.2d 1207, 1212 (7th Cir.1987) (commenting on long tradition of admitting attempts to influence a prosecution witness as indicating defendant's consciousness of the weakness of his case);

*cf. United States v. Hackett*, 638 F.2d 1179, 1186–87 (9th Cir.1980) (admitting false exculpatory statements not for their truth but merely for the fact that they were made, thereby implying consciousness of guilt), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981).[29]

Moreover, even if the district court erred, it was harmless error. As prejudice, Shorter argues that the letter would lead a reasonable juror to infer "facts not otherwise proven by the Government," that is, the existence of the single cocaine conspiracy alleged in the indictment. Given that we affirm the jury's finding of a single cocaine conspiracy, Shorter's claim of prejudice fails.

**3**

■ Shorter also challenges his sentence on various grounds. First, he challenges the district court's determination of the quantity of cocaine base attributed to him for sentencing purposes. We review this factual determination for clear error. *United States v. Beler*, 20 F.3d 1428, 1431 (7th Cir.1994) (noting that reviewing court must affirm unless definitely and firmly convinced that a mistake has been made). "The government bears the burden of establishing the quantity of drugs by a preponderance of the evidence." *Id.*

■ The evidence at trial established that Shorter was the supplier for the distribution network. Accordingly, the district court held Shorter responsible for the actions of his coconspirators as well as his own. The district court calculated the amount of money Shorter received in California by Western Union wires and used an estimated price for the crack cocaine to estimate the quantity of

---

27. In similar circumstances, courts regularly find limiting instructions sufficient to dispel prejudice. *See Zafiro,* — U.S. at —, 113 S.Ct. at 938 (explaining that "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice"); *United States v. Clark,* 989 F.2d 1490, 1499 (7th Cir.1993) (accepting limiting instruction as sufficient to avoid prejudice); *United States v. Rivera,* 6 F.3d 431, 438 (7th Cir.1993) (same as *Clark* ), *cert. denied,* — U.S. —, 114 S.Ct. 1098, 127 L.Ed.2d 411 (1994).

28. The letter suggested that Roux should not implicate Shorter when he testified. *See supra* Part I.

29. Shorter appears also to argue that, because the letter was written after the conspiracy ended, it could not be admitted because it was not in furtherance of the conspiracy. This limitation, however, applies only to statements admitted as statements by a coconspirator. Because the letter was admissible on other grounds, the limitation does not bar admission.

distributed drugs attributable to Shorter.[30] The district court also added the 203 grams seized from Shorter's Fort Wayne apartment, and consequently held Shorter responsible for 2.15 kilograms of crack cocaine.

Shorter contends that the district court erred in classifying the entire quantity as cocaine base and not at least partially as cocaine powder. The evidence indicated that Shorter either delivered the cocaine in crack form or that the other participants converted it to crack form prior to selling it. The evidence also indicated that Shorter knew of or reasonably should have foreseen the conversion to crack form. Roux, Davidson, Tanksley, Martin, and others testified that Shorter was the source of the crack cocaine. Moreover, there is no evidence that the participants who actually sold the drugs sold anything but crack cocaine. Because we hold Shorter responsible for the actions of his coconspirators and the quantity calculated was based on proceeds from the crack cocaine sales, the district court classified the result of that calculation as cocaine base and not cocaine powder.[31] We see no clear error in this result.[32]

■ Shorter lastly argues that the district court should have applied the 1988 Sentencing Guidelines and not the 1992 edition.[33] Sentencing courts apply the guidelines in effect at the time of sentencing unless doing so would violate the Ex Post Facto Clause. *United States v. Hathcoat,* 30 F.3d 913, 919 (7th Cir.1994). We review the choice of guideline edition for plain error because Shorter did not argue it below. *United States v. Aman,* 31 F.3d 550, 557 (7th Cir. 1994) (reviewing ex post facto claim not raised below for plain error because error might affect substantial rights); *cf. United States v. Olano,* — U.S. —, —, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993) (" 'Plain' is synonymous with 'clear' or, equivalently, 'obvious.' "). "[W]hen the Sentencing Commission amends the Guidelines to increase the severity of a punishment, the Ex Post Facto Clause prohibits application of the amended Guidelines to crimes performed before the amendment's effective date" if the new range would have required an upward departure under the preamendment Guideline. *United States v. Kopshever,* 6 F.3d 1218, 1222–23 (7th Cir.1993); *see also United States v. Seacott,* 15 F.3d 1380, 1384 (7th Cir.1994) ("[R]etroactive application of a harsher sentencing guideline contravenes the very purpose of the Ex Post Facto Clause."); *id.* at 1386 ("[A] guideline amendment which occurs after the commission of the defendant's crime which works to the defendant's

---

**30.** Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance. In making this determination, the court may consider, for example, the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved.

U.S.S.G. § 2D1.1, app. note 12 (Nov.1992). The district court found the average price to be $27.50 for a 0.29 gram rock of crack cocaine. Agent Serletti testified that Shorter received by wire a total of $184,245 in proceeds from the sale of crack cocaine. This equates to 1995 grams. The district court deducted 47 grams as being outside the scope of the conspiracy.

**31.** Because the actions of his coconspirators are attributable to Shorter, the fact that no one could say that Shorter himself "cooked" the powder into crack form is immaterial.

**32.** Indeed, because the calculation did not account for money Shorter received directly, the

result probably understates the quantity attributable to Shorter. That the court attributed less cocaine to Shorter than the evidence actually indicated supports our conclusion that the district court did not err. *See United States v. Walton,* 908 F.2d 1289, 1302 (6th Cir.) ("[T]he guidelines do not permit the District Court to hold a defendant responsible for a specific quantity of drugs unless the court can conclude the defendant is more likely than not *actually* responsible for a quantity greater than or equal to the quantity for which the defendant is being held responsible."), *cert. denied,* 498 U.S. 990, 111 S.Ct. 532, 112 L.Ed.2d 542 (1990).

Shorter also contends that the district court should have applied a base sentencing level for cocaine powder and not cocaine base. The evidence indicated that the purpose of the conspiracy was to sell cocaine in its base form. Because we have concluded above that the district court properly attributed all 2.15 kilograms to Shorter as cocaine base, the district court did not err in using the sentencing levels for cocaine base.

**33.** Amendments effective Nov. 1, 1989, raised the offense levels for cocaine base.

detriment is inapplicable because it is a violation of the Ex Post Facto Clause.").

Determining whether an amended guideline can violate the Ex Post Facto Clause turns on whether the criminal conduct extended past the effective date of the amendment. *Kopshever,* 6 F.3d at 1221. The evidence revealed that Shorter's involvement in the conspiracy extended well after the 1989 effective date of the amendments incorporated in the 1992 Guidelines. Consequently, their application to Shorter does not violate the Ex Post Facto Clause, and the district court made no error.

### III

For the foregoing reasons, we AFFIRM the conviction and sentence of Shorter, VACATE Tanksley's sentence, and REMAND Tanksley's case for resentencing.