**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James E. SCHUSTER, Defendant–
Appellant.**

**No. 90–3642.**

United States Court of Appeals,
Seventh Circuit.

Submitted Oct. 1, 1991.*

Decided Nov. 4, 1991.

Rehearing Denied Jan. 9, 1992.

See also 775 F.Supp. 297.

Patrick J. Fiedler, U.S. Atty., Ruth M. Heitz, Office of the U.S. Atty., Madison, Wis., for U.S.

Morris D. Berman, Giesen & Berman, Madison, Wis., for defendant-appellant.

Before CUMMINGS, CUDAHY, and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

James E. Schuster and Ervin Harnois began growing marijuana together in 1986. They would plant seeds and cultivate the seedlings indoors until they were large enough to be transplanted outdoors. Schuster taught Harnois how to separate the male from the female marijuana plants. On August 1, 1989, pursuant to a search warrant, Investigator James Jacobson and other members of the Sheriff's Department of Bayfield County, Wisconsin, searched the residence and property of Ervin Harnois. They found three gardens containing more than 180 marijuana plants as well as a number of starter pots, fertilizer and electric timers. On June 20, 1990, Schuster was indicted on a single charge of conspiracy to possess with intent to manufacture

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Fed. R.App.P. 34(a); Circuit Rule 34(f). Defendant-appellant has filed such a statement and requested oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied, and the appeal is submitted on the briefs and the record.

marijuana plants in violation of 21 U.S.C. § 846. On July 30, 1990, the government served notice of its intent to seek the mandatory minimum penalty of five years' imprisonment under 21 U.S.C. § 841(b)(1)(B)(vii) on the basis of Schuster's alleged possession with intent to manufacture 100 or more marijuana plants. Schuster pleaded guilty to the single count on September 14, 1990.

At sentencing, Schuster argued that the conspiracy between Harnois and him lasted only until October 1987, while the government contended that it continued until August 1, 1989. The duration of the conspiracy is significant both in establishing the application of the five-year minimum term and in determining whether the number of marijuana plants involved exceeded 100. At the sentencing hearing, the government called Pam Schuster, Schuster's ex-wife, Debra Carlson, Harnois' girlfriend during the period in question, and Ervin Harnois. Pam Schuster testified that she was aware of the marijuana operation in which Schuster would plant marijuana seeds in starter pots at their residence and remove them after they had grown into seedlings. She also testified that Harnois would bring grown marijuana for Schuster to sell. Carlson testified that while she was living with Harnois between 1986 and 1989 Schuster brought marijuana plants to Harnois' residence. She also testified that after Schuster had moved to Superior, Wisconsin, she and Harnois would make trips to Superior once a week to meet with Schuster and that Harnois always had a lot of money when they left. Harnois testified that he and Schuster grew marijuana plants from 1986 to 1989. Although in October 1987, Schuster told Harnois that he wanted nothing to do with him, Harnois testified that Schuster continued to supply him with marijuana seeds.

Schuster called six witnesses on his behalf. Investigator Jacobson testified that he found nothing in his search of Harnois' residence linking the marijuana plants to Schuster. Schuster's son, Kyle, testified that he observed his father and Harnois arguing at the Harnois house in October 1987 and that he heard his father say "I'm through with that guy" when he returned to the car.[1] Schuster's girlfriend, Vanessa Miner, testified that she heard Schuster and Harnois discuss Harnois' arrest in September or October 1989. She stated that Schuster told Harnois that he had warned Harnois that "it was going to happen" and that was the reason Schuster had left the joint undertaking. Howard and Sandra Wilkes, Schuster's apartment complex managers, and Betty Schuster, Schuster's mother, all testified that they had never seen any signs of marijuana in Schuster's apartment in Superior from the time he moved there in October 1987.

The court determined that Schuster participated in the conspiracy until Harnois' arrest in 1989. The court found that Schuster's range under the Sentencing Guidelines was 21 to 27 months. However, because the statutory minimum sentence was greater than the maximum applicable Guideline range, the court sentenced Schuster to the statutory minimum of five years. *See* U.S.S.G. § 5G1.1(b).

Schuster challenges his sentence on appeal. He argues that, in order to determine the quantity of drugs applicable to sentencing, it was necessary to determine the duration of the conspiracy between him and Harnois. If the conspiracy terminated in October 1987, the Sentencing Guidelines and the five-year minimum term would not apply.[2] Under the pre-Guidelines law and

---

**1.** The basis of the argument was that Ryan Rude, to whom Harnois had sold marijuana, had been arrested.

**2.** The Sentencing Guidelines went into effect on November 1, 1987. The Guidelines apply to conspiracies that commenced prior to November 1, 1987 and continued after that date. *United States v. Osborne,* 931 F.2d 1139, 1144 (7th Cir.1991). The amendment that established the minimum sentence of five years for an offense

involving 100 or more marijuana plants was enacted on November 18, 1988. *See* Anti–Drug Abuse Act of 1988, Pub.L. 100–690 § 6479(2), 102 Stat. 4181, 4382 (1988). Prior to the 1988 Act, the statute provided for a minimum sentence based on the weight of marijuana, not the number of plants.

parole system, Schuster would be subject to a maximum term of imprisonment of five years, with an estimated time in custody of zero to six months. If, on the other hand, the conspiracy continued to 1989 and involved more than 100 marijuana plants, Schuster was subject to a mandatory minimum term of imprisonment of five years and a maximum term of forty years. Schuster argues that because of the drastic increase in sentence dictated by the conspiracy determination, the government should have been required to prove his participation in a conspiracy encompassing 100 or more marijuana plants *by clear and convincing evidence. Citing United States v. Kikumura,* 918 F.2d 1084 (3d Cir.1990).

 We review the findings of fact made by the sentencing court only for clear error. *United States v. Miller,* 891 F.2d 1265, 1269 (7th Cir.1989). Determinations of credibility by the sentencing judge are entitled to great deference on review. *United States v. Oduloye,* 924 F.2d 116, 118 (7th Cir.1991). It is well-settled that where the severity of the punishment is linked to the existence or nonexistence of exculpatory or mitigating facts, the preponderance of the evidence standard satisfies due process. *McMillan v. Pennsylvania,* 477 U.S. 79, 84, 106 S.Ct. 2411, 2415, 91 L.Ed.2d 67 (1986); *see also United States v. Fonner,* 920 F.2d 1330, 1333 (7th Cir. 1990); *United States v. White,* 888 F.2d 490, 499 (7th Cir.1989).

Schuster argues, however, that *McMillan* did not contemplate the preponderance standard where "the magnitude of a contemplated departure is sufficiently great that the sentencing hearing can fairly be characterized as 'a tail which wags the dog of the substantive offense.'" *Kikumura,* 918 F.2d at 1101 (quoting *McMillan,* 477 U.S. at 88, 106 S.Ct. at 2417). In *Kikumura,* although the Sentencing Guidelines prescribed a sentencing range of 27 to 33 months of imprisonment, the sentencing judge departed and imposed a sentence of 30 years. The Third Circuit held that the factfinding underlying such extensive departures must be established by *clear and convincing evidence. Id.* The Eighth Circuit has recently noted that *"McMillan* allows for the possibility that the preponderance standard the Court approved for garden variety sentencing determinations may fail to comport with due process where ... a sentence enhancement factor becomes 'a tail which wags the dog of the substantive offense.'" *United States v. Townley,* 929 F.2d 365, 369 (8th Cir.1991) (quoting *McMillan,* 477 U.S. at 88, 106 S.Ct. at 2417). Thus, the Eighth Circuit certainly did not foreclose the possibility that the standard of clear and convincing evidence, which the Third Circuit had employed, may be appropriate in an exceptional case. But the Eighth Circuit was not required to decide the issue because it found that even the preponderance standard had not been met in *Townley. Id.* at 370.

 This Court has consistently held that the quantity of drugs involved in a narcotics case does not constitute a substantive element of the drug offense. *See United States v. Ebbole,* 917 F.2d 1495, 1501 (7th Cir.1990) (noting that the quantity of drugs is not an element of drug offenses); *United States v. Reynolds,* 900 F.2d 1000, 1004 (7th Cir.1990) (Guidelines have not added any elements to drug offenses: "[t]hey merely make more precise the weight afforded the quantity of narcotics during sentencing"); *United States v. Acevedo,* 891 F.2d 607, 611 (7th Cir.1989) (§ 841(b) is a penalty enhancement and "has nothing to do with the substantive elements of the underlying offense"). Rather, the amount of drugs involved in an offense requires a determination to be made by the sentencing judge. This determination goes to the severity of the sentence and need only be made by a preponderance of the evidence except in such unusual circumstances as *Kikumura. United States v. Ross,* 905 F.2d 1050, 1054 (7th Cir.1990); *White,* 888 F.2d at 499 ("Guidelines' standard for resolving disputes is a preponderance of the evidence"). The district court correctly employed the preponderance of the evidence standard to determine that Schuster's participation in the conspiracy with Harnois continued to Octo-

ber 1989 and thus involved more than 180 marijuana plants.[3]

In the alternative, Schuster argues that the government failed to meet its burden by a preponderance of the evidence. At the close of the evidence, the sentencing judge concluded that although all of Schuster's witnesses were credible, the government had proved by a preponderance of the evidence that Schuster was involved in the conspiracy through 1989. The court explained that its credibility determination was not inconsistent with its conclusion. Despite its "concern" with Harnois' testimony, the court found that in 1988 and 1989 the marijuana-growing operation was moved to the Harnois property but that Schuster continued to provide assistance in the sexing and harvesting of the plants. In addition, the court found that Harnois had neither the opportunity nor the ability to engage in the distribution of the marijuana and that Schuster continued to fulfill that function as he had earlier. The findings of fact of the district court are not clearly erroneous, and the government has met its burden by a preponderance of the evidence.

The judgment of the district court is therefore AFFIRMED.

---

3. *Kikumura,* of course, involved a significant departure from the Guidelines, which was not involved in Schuster's sentence. In addition, we do not consider the case before us to be "exceptional" in the same sense as *Kikumura.*