UNITED STATES of America, Plaintiff–Appellee,

v.

Tyrone JOHNSON, Richard Dover and Thomas R. Johnson, a/k/a Tim Johnson, Defendants–Appellants.

Nos. 93–3056 to 93–3058.

United States Court of Appeals, Seventh Circuit.

Argued April 8, 1994.

Decided Aug. 9, 1994.

---

Andrew B. Baker, Jr., Asst. U.S. Atty., Dyer, IN, Barbara Z. Brook, Asst. U.S. Atty., South Bend, IN (argued), for U.S.

Glenn Seiden, Seiden & Associates, Chicago, IL (argued), for Tyrone Johnson.

Lawrence Edmund Sommers, Chicago, IL, for Richard Dover.

Tim Biasiello, Chicago, IL (argued), for Thomas R. Johnson.

Before CUMMINGS and RIPPLE, Circuit Judges, and TINDER, District Judge.*

_____

* The Honorable John D. Tinder of the Southern District of Indiana is sitting by designation.

CUMMINGS, Circuit Judge.

In November 1992 a grand jury sitting in the Northern District of Indiana, South Bend Division, returned a three-count indictment against defendants Tyrone Johnson, Thomas Johnson, and Richard Dover. Count 1 charged the defendants with conspiracy to possess with intent to distribute over 500 grams of cocaine in violation of 21 U.S.C. § 846. Counts 2 and 3 charged defendant Tyrone Johnson with conducting financial transactions in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and (a)(2).

On April 20, 1993, a jury found the three defendants guilty on Count 1 of the indictment. The jury also found Tyrone Johnson guilty on both counts of money laundering, but those convictions are not at issue in this appeal.

In August 1993 Tyrone Johnson was sentenced to a term of imprisonment of 301 months on Count 1, 240 months on Count 2 and 240 months on Count 3, all to run concurrently. Thomas Johnson was sentenced to a term of imprisonment of 156 months and defendant Dover to a term of 174 months.

## I.

At the defendants' trial, the government offered the testimony of John and Lenneth Lipsey, Charles Taylor, and Bobbie Sleepers, each of whom implicated the defendants in drug transactions.

John Lipsey testified that he met defendant Richard Dover in early 1987 and bought four- to five-ounce quantities of cocaine from Dover for three months. Dover eventually introduced him to Tyrone Johnson (Dover told Lipsey that Tyrone wanted to meet the person "who was buying all the stuff." (Tr. 266)). At their first meeting, Lipsey and Tyrone discussed weight, price and quantities. Lipsey ordered 500 grams of cocaine, which was delivered later that day by Dover.

Lipsey testified that he purchased cocaine from Tyrone Johnson and Dover until sometime in 1988. Lipsey indicated that when he wanted to purchase cocaine, he would call a beeper number given to him by Tyrone Johnson and Dover. Initially Lipsey paid cash for the cocaine he received, but soon was allowed to purchase on credit. Lipsey ordered cocaine in amounts of up to two kilograms. Payments for the orders were made either to Tyrone or Thomas Johnson or to Dover. Lipsey testified that when he ordered 1,000-gram quantities of cocaine it would come stuffed in a teddy bear and that he remembered receiving two or three teddy bears. Lipsey indicated that over the course of his dealings with the Johnsons and Richard Dover he received approximately twelve to thirteen kilograms of cocaine.

Lenneth Lipsey, John Lipsey's brother, testified that he purchased cocaine from the defendants in 1987 and 1988. Although Lenneth and John were in the cocaine business together, Lenneth occasionally bought and sold cocaine independently of his brother. Lenneth testified that a friend introduced him to Tyrone Johnson and that at their first meeting, he and Tyrone discussed prices for quarter kilos, half kilos, and kilos. Lenneth was given beeper numbers for Dover and for both Johnsons. Lenneth's first order was for a quarter kilo, which was delivered a week later by Richard Dover. Lenneth testified that he purchased approximately six to seven quarter kilos of cocaine from the defendants between 1987 and 1988. Both Lipsey brothers testified that Tyrone Johnson appeared to be the leader of the three defendants.

Charles Taylor testified that he purchased cocaine from Thomas Johnson and Dover in late 1988. Taylor indicated that he received half-ounce quantities of cocaine from Thomas Johnson on four or five occasions and from Dover on approximately three occasions. Taylor testified that on some occasions cocaine ordered through Thomas Johnson was delivered by Dover.

Bobbie Sleepers testified that he ordered quarter, half and eventually full kilo quantities of cocaine from the defendants in 1987 and early 1988. Sleepers testified that when he started ordering full kilos, he was introduced to Tyrone Johnson. When Sleepers ordered full kilos, Dover would bring the cocaine and Tyrone would show up to count the payment. Sleepers testified that he re-

ceived between 10 and 15 kilos of cocaine from the defendants.

## II.

▋ Defendants' first claim on appeal is that the district judge committed reversible error by failing to give a multiple conspiracy instruction to the jury. Since the defendants did not tender a multiple conspiracy instruction, their claim is reviewed under the stringent "plain error" standard. *United States v. Easley*, 977 F.2d 283, 285–286 (7th Cir. 1992). Moreover, in order for defendants to be entitled to such an instruction, evidence must have been presented that would have allowed a reasonable jury to conclude that the defendants were part of separate conspiracies. *United States v. Severson*, 3 F.3d 1005, 1010 (7th Cir.1993). No such evidence was presented. Although the testimony of the Lipseys, Charles Taylor and Bobbie Sleepers allows an inference that these witnesses were not aware of every aspect of the charged conspiracy, nothing in their testimony indicates that the defendants were themselves involved in distinct conspiracies. Rather, the evidence suggests that together the defendants were the "hub that conspired with the spokes." *United States v. Flood*, 965 F.2d 505, 509 (7th Cir.1992), certiorari denied, 113 S.Ct. 437. There is little, if any, need for a multiple conspiracy instruction when the defendants are at the hub of the various possible agreements. Cf. *id*. The district court, therefore, did not err by failing to give a multiple conspiracy instruction.

## III.

▋ Defendants' brief suggests that there was a variance between conduct for which they were charged and the facts proved at trial, thus entitling them to a reversal of

their convictions. See, *e.g.*, *United States v. Marshall*, 985 F.2d 901, 907 (7th Cir.1993), certiorari denied, —— U.S. ——, 113 S.Ct. 2445, 124 L.Ed.2d 662. To prevail on this claim, the defendants must demonstrate that the evidence produced at trial failed to establish the charged conspiracy. *Id*. The evidence set out in part I, however, was clearly sufficient to support a finding that together the defendants engaged in a scheme to distribute drugs. Thus to the extent that the defendants claim that they were prejudiced by a variance from the charge against them, the argument is without merit.

## IV.

▋ Defendants next attack various findings made by the district court in determining the length of their sentences. Specifically, defendants claim that the trial court's use of the preponderance of the evidence standard in determining whether the charged conspiracy continued after the effective date of the Sentencing Guidelines and in determining the quantities of drugs involved in the conspiracy violates due process. It is well settled, however, that due process is generally satisfied when sentencing issues are resolved under the preponderance of the evidence standard. *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986); *United States v. Corbin*, 998 F.2d 1377 (7th Cir.1993), certiorari denied, —— U.S. ——, 114 S.Ct. 1124, 127 L.Ed.2d 432 (1994); *United States v. Ebbole*, 917 F.2d 1495, 1497–1500 (7th Cir.1990); *United States v. Ross*, 905 F.2d 1050, 1054 (7th Cir.1990), certiorari denied, 498 U.S. 863, 111 S.Ct. 172, 112 L.Ed.2d 136.[1]

## V.

▋ Section 2D1.1 of the Sentencing Guidelines requires that a sentencing judge

---

1. Some cases suggest that issues may arise at sentencing that might more properly be resolved at trial and that in such circumstances a standard of proof greater than a preponderance of the evidence might be appropriate. See, *e.g.*, *United States v. Schuster*, 948 F.2d 313, 315 (7th Cir.1992) (discussing cases that suggest that preponderance standard might be insufficient when import of determination made at sentencing is so great that it " 'can fairly be characterized as [the] tail which wags the dog of the substantive offense' " (quoting *United States v. Kikumura*, 918

F.2d 1084, 1101 (3d Cir.1990)). The amount of drugs attributable to a defendant, however, has canonically been a sentencing issue. *Id*. ("This Court has consistently held that the quantity of drugs involved in a narcotics case does not constitute a substantive element of the drug offense.") Thus, as *Schuster* makes abundantly clear, a sentencing court may validly employ a preponderance of the evidence standard to determine the quantity of drugs involved in a conspiracy.

make findings as to the amount of drugs involved in a conspiracy in order to determine the base offense level. Since no controlled substances were seized in this case, the amounts of controlled substance for which defendants were sentenced were based on the government witnesses' estimations of the amounts they received from the defendants. The defendants claim that because it allows the quantities of controlled substances to be determined through potentially inaccurate testimony, Section 2D1.1 violates due process.

Defendants' claim is without merit. This Court has already held that Section 2D1.1 passes constitutional muster. *United States v. Reynolds,* 900 F.2d 1000, 1002–04 (7th Cir.1990). Moreover, it is well established that due process does not require that the facts on which a sentence is based be correct beyond any doubt. *United States v. Schuster,* 948 F.2d 313, 315 (7th Cir.1991). Thus despite the potential inaccuracy of witness testimony regarding amounts, it does not violate the constitution to base a sentence on such testimony as long as the court's conclusions are supported by a preponderance of the evidence. *Id.* The court is, of course, entitled to resolve all questions of credibility. Moreover, defendants are entitled to an opportunity to rebut any evidence presented regarding amount—indeed, all four government witnesses here were extensively cross-examined.

### VI.

Defendants' final claim on appeal is that Judge Miller's findings of fact as to the quantities of cocaine and the length of the conspiracy were clearly erroneous. The testimony of the Lipseys, Bobbie Sleepers and Charles Taylor, however, clearly supports the district court's conclusions. Their testimony was sufficient to establish by a preponderance of the evidence that the conspiracy continued until after the effective date of the Sentencing Guidelines, *United States v. Os-*

*borne,* 931 F.2d 1139, 1144 (7th Cir.1991), and that more than 15 kilograms of cocaine were involved.[2]

### VII.

The convictions and sentences of the defendants are affirmed.

---

**2.** The court determined that 18.87 kilograms of cocaine were attributable to the conspiracy. This figure was based on the court's estimate that John Lipsey received at least 7 kilograms, Lenneth Lipsey received 1.5 kilograms, Charles Taylor received 0.07 kilograms, and Bobbie Sleepers received 10 kilograms. These amounts were less than the amounts the witnesses estimated they received: John Lipsey estimated that he received 12 to 13 kilograms; Lenneth Lipsey, 6 to 7 kilograms; Charles Taylor, 7 half-ounce quantities; and Bobbie Sleepers, 10–15 kilograms.