incurred and for any future liability and expenses.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Vincent TOWNSEND, Defendant–
Appellant.

No. 95–1985.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 22, 1995.

Decided Jan. 11, 1996.

748

Timothy O'Shea (argued), Office of United States Attorney, Madison, WI, for Plaintiff–Appellee.

David A. Geier (argued), Larowe, Gerlach & Roy, Madison, WI, for Defendant–Appellant.

Before BAUER, CUDAHY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Vincent Townsend was charged with conspiracy to distribute cocaine base and possession of cocaine base with intent to distribute. *See* 21 U.S.C. §§ 841(a)(1) and 846. Mr. Townsend pleaded guilty to the second count, possession. On April 10, 1995, he was sentenced to 108 months in prison and five years of supervised release. Mr. Townsend appeals the sentencing court's calculation of the amount of cocaine base included in his relevant conduct and the court's denial of an additional one-level adjustment for acceptance of responsibility. *See* U.S.S.G. § 3E1.1(b). For the reasons set forth in the following opinion, we affirm in part and reverse and remand in part the judgment of the district court.

I

BACKGROUND

A. *Facts*

In March 1993, a series of arrests in Madison, Wisconsin led police to Vincent Townsend.[1] First Dwight Walker told Madison Police Detective William Searls that Brian Beal and Franklin Robinson had supplied him with cocaine base and had sold cocaine base out of Walker's apartment. Walker

---

1. A more detailed account of the circumstances surrounding the arrests can be found in *United States v. Franklin Robinson,* 30 F.3d 774 (7th Cir.1994).

described Beal and Robinson; he then informed Detective Searls that they were at the Highlander Motel, that they were from Chicago, and that they worked for Beal's cousin, another Chicagoan named "Vincent."

When officers detained, questioned and later arrested Beal and Robinson at the Highlander Motel, they found 1.48 grams of cocaine base in baggies (sometimes called "gem packs") in the snow where Robinson had been standing and 24.9 grams of cocaine base under the carpet in the motel room. Beal eventually told Detective Searls that the drugs in the motel room belonged to Vincent Townsend and that Robinson sold Townsend's cocaine base in Wisconsin. Beal also stated that he had come to Wisconsin four or five times with Vincent Townsend to drop off cocaine base for Robinson at the apartment Robinson shared with Daphne Walker. In a separate interview, Robinson admitted that he had obtained the cocaine base from Vincent Townsend. He explained that he had sold Townsend's cocaine base in Madison for the prior five or six months. He received deliveries from Townsend twice a month. Dwight Walker later identified Beal and Robinson from their photographs and confirmed that they dealt cocaine base for Vincent Townsend.

Others who were interviewed by Officer Searls also implicated Mr. Townsend in the conspiracy.[2] On March 31, 1993, Robinson's girlfriend, Daphne Walker, testified before the grand jury that Vincent Townsend was the "leader," that he brought cocaine base to Robinson approximately twice a month, and

that the drug proceeds were "wired" back to Vincent Townsend in Chicago. On August 25, 1993, Franklin Robinson testified before the grand jury as well. He stated that Vincent Townsend first brought an eighth of an ounce of cocaine base (an "eight-ball") for him to sell in Madison, and that Mr. Townsend continued, thereafter, to bring cocaine base from Chicago about every other week for six months, eventually delivering one ounce of cocaine base each time. Robinson also verified that Beal, Vincent Townsend's cousin, joined the conspiracy and sold cocaine in Madison. Drug proceeds were then "wired" back to Mr. Townsend. Western Union corroborated that testimony: Between June 20, 1992, and February 3, 1993, Vincent Townsend received $5,693 via Western Union from individuals in Madison; in all, $13,419 was wired to or from Mr. Townsend during that time period.

On the basis of that information, a federal grand jury indicted Mr. Townsend. He eventually pleaded guilty to the second count of the indictment, possession with intent to distribute. In its presentence report, the government submitted that Mr. Townsend possessed approximately 95.85 grams of cocaine base between June 1992 and March 1993[3] and 26.38 grams found at the motel on March 3, 1993. The defendant filed objections and amended objections[4] to the presentence report.

## B. *The Sentencing Determination*

At the sentencing hearing conducted by the district court on April 10, 1995, Mr.

---

2. Dwight Walker's girlfriend, Detra Brown, told Detective Searls that Mr. Townsend agreed to pay Walker $200 to allow Beal and Robinson to sell cocaine base out of Walker's apartment. She also told him that Townsend and Beal had transported cocaine base to Madison throughout the preceding summer. Robinson's girlfriend, Daphne Walker, told the detective that she lived with Robinson in the apartment and that Townsend and Beal began bringing cocaine base to Robinson in June 1992.

3. The government derived the number of grams of cocaine base attributable to Mr. Townsend from the following calculation: Each gram of cocaine base produced approximately seven $20 "rocks"; thus one gram costs $140. Western Union records reflect wire transfers between Mr. Townsend and individuals in Madison of $13,-

419. That amount of drug proceeds, when divided by $140 per gram, reflects 95.85 grams of cocaine base Mr. Townsend possessed and distributed.

4. On April 7, 1995, Mr. Townsend's defense counsel sent a letter to the district court amending Mr. Townsend's objections to the presentence report. R.25. The letter contained Mr. Townsend's admission that the cocaine base sold in Madison, Wisconsin, by Beal and Robinson between March 1 and March 3, 1993, was the cocaine base Mr. Townsend brought to Madison. It stated, as well, that Mr. Townsend was not objecting to the 24.9 grams that the government could prove to be in the motel room on March 3. It then enumerated objections to other paragraphs in the presentence report. Those objections are the subjects of this appeal.

Townsend admitted supplying to Beal and Robinson the 24.9 grams of cocaine base found on March 3, 1993. However, he denied responsibility for any prior cocaine transactions with those two men and insisted he was not their source for whatever cocaine base they may have distributed in Madison before March 1993. He also contended that the Western Union transfers did not represent drug proceeds. He claimed, in his Objection to the Presentence Report, that the wire transfers were made to a stepbrother for car payments, to another man to buy car rims and tires, and for monies borrowed by various people. In support of that statement, Mr. Townsend submitted two affidavits indicating that wire transfers to Yolanda Robinson and to Rona Mosely were not for drug-related activities.

Nevertheless, the court believed that the evidence overwhelmingly reflected "that the grams involved are at least 50 and as much as 150." R.34 at 15. Based on Mr. Townsend's admissions, the court initially determined that Robinson, Beal and the defendant were involved with the gem packs weighing 1.48 grams that were found outside the motel room in the snow and the 24.9 grams found in the motel room. The court then determined that Mr. Townsend was the source of supply for Beal and Robinson prior to March 1, 1993. It accepted Robinson's and Daphne Walker's sworn statements to the grand jury that Robinson was selling Mr. Townsend's cocaine base over a period of six to seven months prior to the motel incident. The court then estimated that Mr. Townsend came to Madison delivering an ounce of cocaine once a month, for an additional amount of seven ounces. After noting that the defendant was not earning any money from gainful activity but that he was getting money from somewhere, the court concluded that Mr. Townsend's Western Union transfers represented drug proceeds. It noted the presentence report's calculation that 95.85 grams of cocaine base could be attributed to Townsend. To ensure against over-estimating the amount, the court accepted only half that quantity and concluded that the records reflected 46 grams of cocaine base which, when added to the 26.38 grams found in the possession of Beal and Robinson, totalled more than 72 grams of cocaine base. The court then held that the amount of relevant conduct cocaine base was certainly between 50 and 150 grams.

On the question of a base level adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, the district court noted that Mr. Townsend had timely provided information to the prosecutor and had timely pleaded guilty; however, he also had falsely denied relevant conduct determined by the court to be true. Nevertheless, it granted a two-level (but not a three-level) downward departure for acceptance of responsibility. In its written Statement of Reasons, the district court presented its determination:

> The court accepts the guideline calculations as submitted by the probation office except as herein stated and finds that all relevant conduct as defined in § 1B1.3 is contained in Count II of the indictment to which the defendant pled guilty. The amount of cocaine base involved in this offense is between 50 and 150 grams, more likely 72 grams to 96 grams. The offense level is 32, less 2 levels for acceptance of responsibility, for an offense level of 30. The defendant's false denial of relevant conduct that this Court by a preponderance of the evidence determines to be true requires that a 3 level downward departure not be provided. The evidence considered by the Court overwhelmingly demonstrates that this defendant was active in relevant criminal conduct well before the March 1993 offense.

R.29 at 7. Therefore the court granted two levels of downward departure for acceptance of responsibility, reducing the offense level from 32 to 30. Mr. Townsend, with a criminal history category of I, was sentenced in the middle of the guideline range to 108 months in prison plus five years of supervised release.

## II

### ISSUES

A. *Drug Quantities Counted as Relevant Conduct*

1.

Basing his claim on *United States v. Mustread,* 42 F.3d 1097 (7th Cir.1994), Mr. Town-

send submits that he has a due process right to be sentenced on the basis of accurate information concerning the quantities of drugs attributed to him by the court. *Id.* at 1101. He contends that his right to due process was violated because the government relied on the amounts of money received through wire transfers without proof that those amounts were drug-related. Mr. Townsend insists that he met his burden of proof, as required in *Mustread,* by showing that the presentence report fails to establish any relationship between the wire transfers and drug proceeds and by offering his own explanations that the wire transfers were used for car payments, purchases of car parts, and loan repayments. However, when the burden fell back to the government to respond, Mr. Townsend claims the government failed to prove that the wire transfers were in fact a direct result of drug transactions. Mr. Townsend concludes that the government failed to meet its burden of proof under *Mustread* and thus that the drug calculation should be limited to 26.38 grams and the offense level should be 28, not 32.

The government submits that the court's findings on relevant cocaine base were not erroneous. First, it claims that the record reflects that Mr. Townsend repeatedly delivered ounce quantities of cocaine base to Robinson. Despite Mr. Townsend's assertion to the contrary, various witnesses reported that Mr. Townsend was involved in the distribution of cocaine base in Madison from the summer of 1992. Second, the government points out that the wire transfer records were corroborated by Robinson and his girlfriend to be drug proceeds. The government also discounts the defendant's version of the transfers: Mr. Townsend, whose estimated annual income was $8,820, did not have the means to buy expensive car parts or to lend more than $5,000 to individuals. The government concludes that the court properly rejected that story, and that it was not clearly erroneous to decide that the wire transfers involved drug-related monies.

### 2.

Under the Sentencing Guidelines, a sentencing court may increase a defendant's base offense level to account for "relevant conduct." U.S.S.G. § 1B1.3. Conduct considered relevant to determining the appropriate guideline sentencing range includes "all [such] acts and omissions that were part of the same course of conduct or [a] common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). The background commentary to the guideline elaborates that the sentencing calculation may include conduct not formally charged. U.S.S.G. § 1B1.3, comment. (bckg'd). A district court's determination that the defendant's actions constituted part of the same course of conduct as the counts of conviction is a finding of fact which we review only for clear error. *United States v. Alfonso Garcia,* 69 F.3d 810, 819 (7th Cir.1995). We also employ the clearly erroneous standard when reviewing the court's calculation of the quantities of drugs attributable to a defendant for sentencing purposes. *United States v. Vold,* 66 F.3d 915, 918 (7th Cir.1995); *United States v. Franklin Robinson,* 30 F.3d 774, 785 (7th Cir.1994).

As Mr. Townsend correctly states, a defendant has a due process right to be sentenced on the basis of accurate information. *United States v. Ewers,* 54 F.3d 419, 421 (7th Cir.1995) (citing *Mustread* ); *United States v. Beler,* 20 F.3d 1428, 1432 (7th Cir. 1994). Due process is generally satisfied when sentencing issues are resolved under the preponderance of the evidence standard. *United States v. Johnson,* 32 F.3d 265, 269 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1172, 130 L.Ed.2d 1125 (1995). Due process is specifically satisfied when the district court determines the quantity of drugs attributable to a defendant by a preponderance of the evidence. *United States v. Salinas,* 62 F.3d 855, 859 (7th Cir.1995) (citing *Ewers* ). "Information may properly be used in sentencing when it has 'sufficient indicia of reliability to support its probable accuracy.'" *Ewers,* 54 F.3d at 421 (citing *United States v. Lueddeke,* 908 F.2d 230, 234 (7th Cir.1990)). However, this reliability standard "must be rigorously applied." *Beler,* 20 F.3d at 1433; *see* U.S.S.G. § 6A1.3(a) ("In resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider rele-

vant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."). In addition, when aggregating drug quantities to determine whether the evidence establishes that drug transactions are part of the same course of conduct, a sentencing court should explicitly state and support its conclusion that those quantities treated as part of the same course of conduct "bore the necessary relation to the convicted offense." *United States v. Duarte,* 950 F.2d 1255, 1263 (7th Cir.1991), *cert. denied,* 506 U.S. 859, 113 S.Ct. 174, 121 L.Ed.2d 120 (1992).

■ The district court accepted Mr. Townsend's admission that he had sold cocaine base on his own in Madison prior to March 1–3, 1993. However, it believed that Mr. Townsend was also the source of supply for Beal and Robinson in the months preceding March 1993, despite Mr. Townsend's denial of pooled funds or resources. The court scrutinized the statements of the witnesses; it noted that both conspirators and several witnesses (Walker, his girlfriend Detra Brown, and Robinson's girlfriend Daphne Walker) reported that Mr. Townsend had been dropping off cocaine base for Robinson to sell in Madison for six or seven months prior to the March 3, 1993 arrests. Mr. Townsend's only evidence to the contrary was his denial of any link to Beal and Robinson before March 1993. We are convinced that the district court's review of the government's evidence was sufficiently searching to ensure its probable accuracy. *See Vold,* 66 F.3d at 919; *Beler,* 20 F.3d at 1433.

■ We are likewise confident that the sentencing court properly determined that Mr. Townsend's pre-March 1993 drug transactions with Robinson and Beal were part of the same course of conduct. The factors to consider when deciding whether a defendant's previous conduct is part of the same course of conduct or common scheme described in the indictment are clearly summarized in *United States v. Pedro A. Garcia,* 66 F.3d 851 (7th Cir.1995):

> Whether [the defendant's] early transactions were part of the "same course of

conduct" as the offense of conviction ... "depends upon the similarity, regularity and temporal proximity of the incidents in question." ... Furthermore, we have held that a court may find a course of conduct *even without regularity and temporal proximity,* "when there is a 'stronger showing' of similarity between the offense of conviction and the uncharged conduct." To determine whether acts are sufficiently similar for purposes of § 1B1.3, "a court must look to the identity of the participants and their roles in the events at issue, as well as the nature, structure and location of the allegedly related transactions."

*Id.* at 860 (quoting *United States v. Cedano–Rojas,* 999 F.2d 1175, 1180–81 (7th Cir.1993) (citations omitted) (emphasis in original)).

The district court found that Mr. Townsend, "certainly by a preponderance of the evidence," was involved with Beal and Robinson earlier than March 3, 1993. R.34 at 19. We agree that the conduct described by the codefendants and other witnesses reflects, by a preponderance of the evidence, a regular course of conduct (delivery of about one ounce of cocaine base) on a regular basis (every other week) to the same location (Madison) and to the same distributors (Robinson and perhaps Beal). *See Johnson,* 32 F.3d at 269 ("[I]t does not violate the constitution to base a sentence on such testimony [of estimated drug amounts] as long as the court's conclusions are supported by a preponderance of the evidence."). Mr. Townsend admitted selling his own cocaine base in Madison prior to March 1993 and bringing the drugs to Madison about twice a month for a period of time. The court believed that Mr. Townsend both sold his own cocaine base and supplied Beal and Robinson. It made credibility determinations in this instance, as it is authorized to do. We find no error in the district court's reliance on testimony describing Mr. Townsend's conduct as a supplier prior to the admitted March 3, 1993 transaction. *See United States v. Ferguson,* 35 F.3d 327, 334 (7th Cir.1994) (concluding there was no error relying on testimony "from outside the period of the conspiracy") (citing *United States v. Nunez,* 958 F.2d 196 (7th

Cir.) (prior, unindicted cocaine sales were properly considered "relevant conduct" for setting offense levels under sentencing guidelines), *cert. denied,* 506 U.S. 857, 113 S.Ct. 168, 121 L.Ed.2d 115 (1992)), *cert. denied,* —— U.S. ——, 115 S.Ct. 1832, 131 L.Ed.2d 752 (1995). The testimony given to the grand jury and statements made to the police, corroborative of one another, had sufficient indicia of reliability on which the court could rely. *See Ferguson,* 35 F.3d at 333 ("The district court's evaluation of witness credibility will not be disturbed unless it is completely without foundation.").

In addition, both Robinson and Daphne Walker testified before the grand jury that the drug proceeds were sent back to Mr. Townsend by way of Western Union. No challenge was raised to the records of wire transactions or to the amounts of money involved. Such wiring of drug proceeds is a well-known practice of the drug trade; in our case law, both in conviction and sentencing determinations, we have recognized that wire transfer receipts can support an inference of drug transactions.[5] The evidence of wire transfers in this case, which the sentencing court found credible, supports an inference that Mr. Townsend did not at all overcome.[6] We hold that the sentencing court's determination concerning the amount of relevant conduct cocaine base was not clearly erroneous.

## B. *U.S.S.G. § 3E1.1 Acceptance of Responsibility*

### 1.

Mr. Townsend submits that, after the district court granted him a two-point decrease in his offense level for acceptance of responsibility under § 3E1.1(a), he should have received the additional one-point reduction under § 3E1.1(b) because he met the requirements of that guideline: He timely notified the authorities that he would plead guilty; he took responsibility for his offense; and his offense level was greater than 16. The government responds by pointing out the court's generosity in granting a two-point decrease, despite Mr. Townsend's false denial of his involvement before March 1993. It contends that a defendant is not entitled to a reduction if he falsely denies relevant conduct, and therefore there is no error in the district court's decision not to give the third level reduction.[7]

### 2.

Section 3E1.1 of the United States Sentencing Guidelines requires a court to decrease a defendant's offense level if the defendant shows clearly that he has accepted responsibility for his offense. The guideline

---

5. *See, e.g., United States v. Shorter,* 54 F.3d 1248, 1257 (7th Cir.) (relying on Western Union records of wire transfers to sustain conviction), *cert. denied,* —— U.S. ——, 116 S.Ct. 250, 133 L.Ed.2d 176 (1995); *United States v. Brown,* 31 F.3d 484, 494 (7th Cir.1994) (concluding that the defendant's receipt of wire transfers after the point that he claimed to be "frozen out" of the conspiracy is relevant conduct evidencing his continuation as an active leader); *United States v. Rivera,* 6 F.3d 431, 447 (7th Cir.1993) (relying on evidence from co-conspirator's girlfriend that drug proceeds were sent back via Federal Express and Western Union), *cert. denied,* —— U.S. ——, 114 S.Ct. 1098, 127 L.Ed.2d 411 (1994).

6. Mr. Townsend denied that the Western Union wire transfers were drug proceeds. He offered the affidavit of his counsel's paralegal swearing that she listened to the telephone conversation between Mr. Townsend's lawyer and (1) Yolanda Robinson (who stated that the money she received from Mr. Townsend was not drug-related and was used to purchase a car and pay telephone bills), and (2) Rona Mosely (who stated that the money she received from Mr. Townsend was not drug-related and was used for apartment expenses). Neither Mosely nor Robinson submitted an affidavit.

7. Both sides present arguments concerning Mr. Townsend's ability to qualify under subsection (a) in light of the court's finding that he falsely denied that the money received by wire transfer was drug-related. Mr. Townsend contends that the court has no justification for concluding that he denied material conduct. The government responds that Mr. Townsend had the burden of showing that he was entitled to the reduction by admitting his offense, but Mr. Townsend falsely denied the additional relevant conduct (as cocaine base supplier for Beal and Robinson prior to March 1993) for which the court held him accountable under § 1B1.3. This debate need not be pursued, however; the court expressly provided the two-level decrease in the offense level for acceptance of responsibility, and the government did not cross-appeal that sentencing determination.

sets forth what the defendant must prove to qualify for the decrease:

§ 3E1.1. *Acceptance of Responsibility*

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:

(1) timely providing complete information to the government concerning his own involvement in the offense; or

(2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently,

decrease the offense level by 1 additional level.

U.S.S.G. § 3E1.1.

The district court, considering first the § 3E1.1(b) criteria, expressly found that Mr. Townsend timely provided complete information to the government concerning his own involvement in the offense and timely notified authorities of his intention to plead guilty.[8] The presentence report made clear that the offense level for Mr. Townsend was greater than 16. The court concluded, there-

fore, that Mr. Townsend had qualified for a subsection (b) decrease if he satisfied the subsection (a) demonstration of acceptance of responsibility. Concerning the § 3E1.1(a) qualification, however, the court commented that "a defendant who falsely denies or frivolously contests relevant conduct that the Court determines to be true has acted in a manner inconsistent with acceptance of responsibility," and then expressed its "difficulty in determining how [Mr. Townsend's actions] can be anything other than falsely denying relevant conduct." R.34 at 19. Nevertheless, after reviewing the defendant's involvement with Beal and Robinson, the court decided that it would "reluctantly provide" the two-level reduction for acceptance of responsibility, but would not grant the additional § 3E1.1(b) one-level decrease.[9] R.34 at 19–20.

3.

We review a sentencing court's acceptance of responsibility determination, pursuant to § 3E1.1, as a factual determination subject to clear error analysis. *United States v. Covarrubias*, 65 F.3d 1362, 1367 (7th Cir.1995); *United States v. Francis*, 39 F.3d 803, 807 (7th Cir.1994). However, the question whether the district court considered the appropriate factors when it denied the additional downward adjustment under § 3E1.1(b) requires our examination of the district court's interpretation and application of the sentencing guidelines; that review is de novo. *United States v. Rosalez–Cortez*, 19

---

**8.** The court was well aware of the subsection (b) criteria; it noted them and Mr. Townsend's success in attaining them:

We look at 3E1.1 and if the defendant clearly demonstrates acceptance of responsibility, decrease level by two. If the defendant qualifies for a decrease under that, he can get up to three for timely providing complete information to the government concerning his own involvement in the offense. Well, he certainly did that as it concerns the offense, maybe belatedly but the Court will give him the benefit of the doubt that it was timely. And also he did timely notify authorities of his intention to enter a plea of guilty permitting the government to avoid preparation for trial and permitting the Court to allocate its resources efficiently.

R.34 at 18–19.

**9.** The court expressed its decision not to grant the extra one-level decrease in the offense level under § 3E1.1(b) thus:

And I believe that where a defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is a Level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps, that perhaps he should get that additional level. But I'm not going to provide it in a matter of this nature. I believe that he's fortunate to receive the two-level reduction based upon those first prongs which are suggested at 3E1.1.

R.34 at 19–20.

F.3d 1210, 1218 (7th Cir.1994). It is unclear from the record before us whether the defendant adequately preserved this issue.[10] We believe that this ambiguity ought to be resolved in favor of the defendant for two reasons. First, even under a plain error standard, we would reach the issue and grant relief. "A sentence based on an incorrect guideline range constitutes an error affecting substantial rights and can thus constitute plain error." *United States v. Susan Robinson*, 20 F.3d 270, 273 (7th Cir.1994). Second, we are not at all sure that defense counsel was given an adequate opportunity to make further objection. Before asking for further objection, the district court, in explaining his ruling, remarked, "I could be readily persuaded without too much argument to the contrary to take away the entire three-level departure." R.34 at 20. Counsel may well have believed that any further disputation would have resulted in his client's losing the entire reduction. He was not obliged to engage in further argument when such an argument might well place his client at greater risk.

 Section 3E1.1(b), added to the "acceptance of responsibility" guideline effective November 1, 1992, *see* U.S.S.G. § 3E1.1, App. C, amend. 459, was intended to reward early information and guilty pleas that enhance the efficiency of the government and the court. *See United States v. Ervin Robinson*, 14 F.3d 1200, 1203 (7th Cir.1994). It provides an additional one-level reduction when the defendant's conduct is timely enough to avoid trial preparation and scheduling.[11] *See* U.S.S.G. § 3E1.1, comment. (n. 6). The guideline directs rather than allows the sentencing court to reduce the defendant's offense level if the qualifying conditions are met.

 The error made by the district court is its assumption that a qualifying defendant *perhaps* "should get that additional level."

The language of § 3E1.1 is mandatory, not permissive: When a defendant demonstrates that he is qualified for the decrease, the guideline orders the decrease. Judge Selya, of the First Circuit, has succinctly analyzed the obligatory nature of this guideline:

> [N]othing in the language of U.S.S.G. § 3E1.1(b) makes any reference, veiled or otherwise, to judicial power to withhold the one-level reduction.... The language of subsection (b) is absolute on its face. It simply does not confer any discretion on the sentencing judge to deny the extra one-level reduction so long as the subsection's stated requirements are satisfied.

*United States v. Talladino*, 38 F.3d 1255, 1263–64 (1st Cir.1994); *accord United States v. Huckins*, 53 F.3d 276, 279 (9th Cir.1995); *United States v. Tello*, 9 F.3d 1119, 1129 (5th Cir.1993). Under the guideline, therefore, the defendant must be given a two-level decrease under subsection (a) when he clearly accepts responsibility for his offense. After he qualifies for subsection (a), he also must be given an additional one-level decrease under subsection (b) when its criteria are met: (1) the defendant's offense level is 16 or greater before the subsection (a) two-level reduction is considered; and (2) he assists authorities by either timely providing information to the prosecution about his involvement in the offense or timely notifying authorities of his intention to plead guilty.

In this case the sentencing court expressly found that Mr. Townsend met the § 3E1.1(b) criteria. It is clear that it should have granted Mr. Townsend the additional one-level decrease at that point, rather than announcing that the defendant was lucky to receive the two-level reduction he did receive. *See Talladino*, 38 F.3d at 1266 (deciding that court has no discretion under guidelines to deny reduction in offense level for defendant who timely accepted responsibility); *Tello*, 9 F.3d at 1128 (holding that district court

---

10. Following the court's determination of the sentence, Mr. Townsend's counsel stated, "With respect to the guideline calculation of the level, Your Honor, we have no comment other than that's the Court's imposition." R.34 at 21.

11. We have upheld the sentencing court's denial of the one-level reduction when the plea of guilty

was entered just before trial. *See, e.g., Covarrubias*, 65 F.3d at 1367–68 (guilty plea on day of trial did not qualify defendant to additional reduction); *Francis*, 39 F.3d at 807 (guilty plea filed one week before trial did not entitle defendants to extra one-point reduction).

erred in its denial of § 3E1.1(b) reduction because obstruction of justice is not a factor in the subpart (b) analysis). The court's failure to grant that § 3E1.1(b) reduction after acknowledging that Mr. Townsend qualified for it was clear error. For this reason, the sentence should be remanded for resentencing at the offense level of 29 rather than 30, pursuant to § 3E1.1(b).

### Conclusion

For the foregoing reasons, we affirm the district court's relevant conduct determination. However, in light of the district court's clear findings that Mr. Townsend satisfies the criteria of § 3E1.1(b) as well as those of § 3E1.1(a), we affirm in part and reverse and remand in part the judgment of the district court.

AFFIRMED IN PART AND REVERSED AND RE-MANDED IN PART.