**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Joseph A. HEITZINGER,**
**Defendant-Appellant.**

**No. 80–2324.**

United States Court of Appeals,
Seventh Circuit.

Argued May 13, 1981.

Decided Sept. 10, 1981.

Rehearing Denied Oct. 15, 1981.

David P. Schippers, Schippers, O'Brien & Long, Chicago, Ill., for defendant-appellant.

James L. Sanders, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, PELL, Circuit Judge, and LARSON *, Senior District Judge.

LARSON, Senior District Judge.

Defendant-appellant Joseph A. Heitzinger was charged on November 15, 1979, in an 8-Count Indictment with participating in a scheme to defraud and with the use of the mails, in violation of 18 U.S.C. § 1341. The jury on June 6, 1980, found defendant guilty on Counts 1 through 4, and acquitted defendant on Counts 5 through 8. Eileen Weisenburger was also named a defendant but her case was severed and she pled guilty to 2 Counts. She was one of the principal witnesses for the prosecution.

Defendant Heitzinger owned and operated two businesses during the relevant periods charged in the indictment. The first was Bon Voyage Travel, Inc. (Bon Voyage), which operated travel agencies in the Chicago area and elsewhere. The second was Midwest Traffic Service Bureau, Inc. (Midwest).

Midwest operated as a freight clearing bureau. Shipper customers forwarded their freight bills and checks to Midwest for audit and payment. Midwest in turn after audit paid the carriers. Midwest was paid a fee for its services ranging from $50 to $900 per month.

Bon Voyage continued to expand the number of its travel agencies in the relevant period as it has in the past. Though it had substantial accounts receivable, it could not meet deadlines for payment of debts to the airlines. Until late 1975 checks of Bon Voyage and Midwest were exchanged and substantial advances were made by Midwest to Bon Voyage. Defendant disclaimed any knowledge of indebtedness of Bon Voyage to Midwest until late May of 1976 when he was told by Weisenburger that the debt of Bon Voyage to Midwest was $178,000 and by witness Bock (an officer of Midwest) that it was a lot more than $178,000. The denial of knowledge of indebtedness by defendant seems incredible.

Beginning in October 1975 customers of Midwest began receiving calls from their carriers stating that the carriers were not being paid. These calls increased in the following months and continued into June 1976. Some of the customers discontinued doing business with Midwest but some continued to do business with Midwest for one or more months. In response to the customer complaints, Midwest representatives invariably stated that Midwest was having computer problems and that the delay in payment to the carriers would be cleared up. The testimony indicated that the computer problems, if any, were minor. Because the carriers were not paid by Midwest, the customers were forced to pay the carriers and many of the customers lost substantial amounts of money. By June of 1976 $379,646.48 had not been paid by Midwest to the carriers. By the summer of 1976 both Bon Voyage and Midwest were in bankruptcy.

The indictment charged that the defendant concealed and caused to be concealed from Midwest customers the transfers and conversions of its customers' monies. The indictment charged that the customers' bills were marked paid and returned to the customers, when in fact the bills had not been paid. The indictment charged defendant with false representations in that checks in payment of the freight bills had already been mailed, that Midwest was not suffering financial difficulties, and that delay in payment of the customer bills was due to computer difficulties.

The mailings consisting of customer checks and freight bills occurred on February 25, 1976 (Count 1), March 4, 1976 (Count 2), March 29, 1976 (Count 3), and April 2, 1976 (Count 4).

* The Honorable Earl R. Larson, United States Senior District Judge for the District of Minnesota, is sitting by designation.

Defendant argues that the District Court erred in refusing to order a judgment of acquittal as a matter of law in that the testimony of witness Weisenburger was unworthy of belief, the evidence at trial failed to demonstrate the requisite scienter, and, finally, the evidence at trial failed to establish that the mails were used in furtherance of a scheme to defraud. Defendant argues also that the District Court erred in refusing to admit defendant's Exhibit A.

■ The District Court was correct in denying the motion for acquittal.

Witness Weisenburger was one of many witnesses. Her credibility was attacked extensively on cross-examination. It is elementary that the determination of credibility is for the fact finder and here the jury found her worthy of belief. Her testimony as to the defendant's knowledge was supported by witnesses Bock and Leichentritt and others. Defendant's argument is without merit.

The indictment charged that the defendant acted knowingly, wilfully and unlawfully in devising the scheme to defraud and to obtain money of its customers by fraudulent pretenses and promises. Defendant does not challenge the trial court instructions, and the usual instructions as to knowingly and wilfully which relate to scienter were undoubtedly given. There is no merit to defendant's claim.

The mails were used in furtherance of a scheme to defraud. The mailings in Counts 1 through 4 related to mailings from February 25, 1976, to April 10, 1976. The scheme to defraud Midwest's customers continued to late June 1976. The bills of customers were returned marked paid when in fact they had not been paid. Representations were made to customers from October 1975 through June of 1976 that there were computer problems, which according to the testimony were minor. Representations were made that the carriers would be paid in three or four weeks. There was thus a continuing concealment of the financial problems of Midwest. The misrepresentations lulled Midwest's customers into continuing to do business with Midwest. The mails were used in furtherance of the scheme to defraud and this argument of defendant is without merit.

Defendant's proposed Exhibit A was a written document prepared by William Bock in connection with Midwest's bankruptcy proceeding. Bock typed the document for the bankruptcy trustee. The exhibit relates mainly to Federal and State taxes, but does contain the following statement:

Facsimile Signature (JH) used by Eileen [Weisenburger] to draw checks from Freight Traffic Clearing Midwest account for deposit to Bon Voyage bank without Joe's [Heitzinger's] knowledge.

■ Bock identified the document but was not asked any questions as to the source of the information. The exhibit was not offered in evidence during Bock's testimony. The exhibit was offered in the direct examination of the defendant and was ruled inadmissible by the trial court. The exhibit constituted hearsay. It was not a business record of Midwest and was prepared for the Bankruptcy Court. The trial court was correct in not receiving the exhibit. Defendant states in his brief (p. 37) that except for the exclusion of this exhibit the trial was virtually error-free. In view of the overwhelming evidence of defendant's guilt, the exclusion of the exhibit, even if error, did not prejudice the defendant.

■ The indictment did not have separate numbered counts in the ordinary form. Instead it had fifteen numbered paragraphs specifying the details of the scheme and artifices engaged in by the defendants. Numbered paragraph sixteen after charging the defendants with causing

to be placed in authorized depositories for mail matter in the Northern District of Illinois, Eastern Division, to be delivered by the Postal Service to Midwest Freight Traffic Service Bureau, in Wilmette, in the Northern District of Illinois, Eastern Division, envelopes containing the mail matter listed below and sent by the companies designated below, each such use of

the mails being a separate count of this indictment

followed this allegation by listing the following:

| Count | Date | Mail Matter | Sender |
|---|---|---|---|
| One | 02/25/76 | Check and freight bills. | Triangle Home Products, Inc. 945 East 93rd Street Chicago, Illinois |
| Two | 03/04/76 | Check and freight bills. | Amphenol 1830 South 54th Avenue Chicago, Illinois |
| Three | 03/29/76 | Check and freight bills. | Atlantic India Rubber Co. 571 West Polk Street Chicago, Illinois |
| Four | 04/02/76 | Check and freight bills. | CFS Manufacturing Division Chicago, Illinois |

Another paragraph of numbered paragraph 16 read as follows:

b. caused to be delivered by mail in the Northern District of Illinois, Eastern Division, mail matter described below, according to the directions thereon, to the addresses listed below, each such use of the mails being a separate count of this indictment:

| Count | Date | Mail Matter | Sender |
|---|---|---|---|
| Five | 12/08/75 | Listing of invoices and invoices | Amphenol 1830 South 54th Avenue Chicago, Illinois |
| Six | 05/03/76 | Invoice | Ideal Roller & Graphics Co. 2512 West 24th St. Chicago, Illinois |
| Seven | 04/05/76 | List and invoices | Reese Finer Foods Elk Grove Village, Illinois |
| Eight | 04/19/76 | List and invoices | Acro-Adroit, Inc. Chicago, Illinois |

On a reasonable interpretation of the indictment it would appear that each of the first fifteen numbered paragraphs of the indictment applied to all of the counts. Two of these paragraphs were numbered 13 and 14 reading as follows:

13. It was further part of the scheme and artifice to defraud that defendants would and did conceal and cause to be concealed from Midwest customers the transfers and conversions of the monies enumerated in paragraph 11 above from Midwest to Bon Voyage.

14. It was further part of the scheme and artifice to defraud that the defendants would and did cause invoices submitted by Midwest's customers to be marked paid and to be returned to the customers well knowing that Midwest had not yet paid these bills.

We have difficulty with the concept that concealment played any active part in counts one through four. These counts were ones which referred to an original mailing by the customers of Midwest Service to Midwest. With regard to these particular mailings, it seems to us to be questionable whether there had yet been any concealment. Certainly after the defendants got into the act and sent faked invoices marked paid, although they had not been paid, there was both concealment and a scheme to defraud. This was the object of the mailings by Midwest specified in counts five through eight. The jury however found the defendants not guilty on counts five through eight but only guilty on counts one through four.

We somewhat reluctantly conclude that it is within the intendment of the indictment that the plaintiff charged in the indictment that Midwest fraudulently maintained its operation by virtue of an appearance of regularity and legality and that counts one through four were an integral part of the fraudulent scheme. Midwest's receipt of the checks from its customers enabled the defendants to continue to conceal from its customers that money had been conveyed from the Midwest account. The jury could have found that there was an inference from the evidence that the checks mailed, each specified in counts one through four, were used to pay older freight bills which were outstanding for a period of time, thus maintaining a continuing relationship with the customers.

We recognize that the use of the form of indictment here involved no doubt saved paper and secretarial time. It appears to us, however, that the United States Attorney would be well advised before deciding on these economies to scrutinize carefully the applicability of each of the preceding general paragraphs to each of the specific counts.

The conviction of defendant is affirmed.