**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**John McCULLEY, also known as Ivan McCulley, Defendant–Appellant.**

**No. 98–1232.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 15, 1998.

Decided May 13, 1999.

---

Scott R. Lassar, Office of the United States Attorney, Criminal Division, Chicago, IL, Daniel L. Olson (argued), Office of the United States Attorney, Rockford, IL, for Plaintiff–Appellee.

Wiliam R. Beu (argued), Rockford, IL, for Defendant–Appellant.

Before ESCHBACH, EASTERBROOK and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

A grand jury returned a 26–count indictment charging John (or "Ivan") McCulley and three other employees of Skyway Airlines ("Skyway") with conspiracy and making false statements in connection with their efforts to cut costs by improperly maintaining Skyway aircraft and falsifying company records to conceal such practices from the Federal Aviation Administration ("FAA"). Count 1 charges that Mr. McCulley and the others conspired to make false statements to the FAA and to defraud the United States by impeding the lawful functions of the agency, in violation of 18 U.S.C. §§ 371 and 1001. The remaining counts charge various defendants with making false statements to the FAA in violation of § 1001. Mr. McCulley, the chief inspector and mechanics' supervisor, was charged in all counts but convicted only on Count 26, which alleges that on December 10, 1992, he and Skyway maintenance coordinator and vice president Gayle (Ole) Bartlet lied to an FAA inspector about whether they used unapproved bearings in starter generators installed on Skyway aircraft. The jury deadlocked on the remaining counts, except one dismissed before trial. The district court sentenced Mr. McCulley to 18 months' imprisonment followed by three years' supervised release. On appeal, Mr. McCulley argues that the district court erred in refusing to allow him to introduce in its entirety a second written statement that he gave to different FAA inspectors on December 10. For the reasons set forth in this opinion, we affirm the judgment of the district court.

## I

## BACKGROUND

The FAA issues airworthiness certificates to airlines that operate safely and comply with FAA rules and regulations. As a condition of receiving an FAA airworthiness certificate, an airline must maintain and provide to the FAA a continuous airworthiness maintenance manual. Among other things, the manual describes the proper parts and components that the airline must use to keep its aircraft in airworthy condition.

During the period in question, Skyway was a division of Mesa Airlines, Inc. ("Mesa"), and Skyway operated under

Mesa's airworthiness certificate.[1] In 1992, Skyway ignored Mesa's continuous airworthiness maintenance manual and installed unapproved parts in its aircraft. The engines on Skyway's aircraft were equipped with Lucas starter generators; these devices contain two Lucas bearings that require periodic replacement. Should these bearings fail, the starter generator cannot start the engine or, more critically, produce electrical power in flight. Instead of using approved Lucas bearings in the Lucas starter generators, Skyway installed cheaper ("Consolidated") bearings. Neither Lucas nor the FAA approves the use of Consolidated bearings in Lucas starter generators; in fact, the FAA does not approve Consolidated bearings for aircraft use at all.

At trial, Skyway employees testified that Mr. McCulley and other supervisors ordered them to install Consolidated bearings but to record Lucas part numbers on work orders. The government contended that, between June 1992 and December 1992, Mr. McCulley approved numerous work orders and inspection documents that falsely represented the use of Lucas bearings. The mechanics testified that they protested using Consolidated bearings because their frequent failures resulted in starter generator failures, often with severe damage to other component parts. In spite of their objections, the witnesses said, Mr. McCulley and other supervisors ignored their concerns and told them to continue using the Consolidated bearings.

In December 1992, several Skyway mechanics contacted the FAA to complain about Skyway's practices. They met with FAA officials and turned over records and parts from failed starter generators to substantiate their allegations. The mechanics' complaints and a later anonymous "hotline" call prompted an FAA inspection team to make a surprise visit to the Skyway maintenance facility on December 10, 1992. At trial, FAA Inspector George Bean testified that he led the inspection team, which also included Robert Luna, aviation safety inspector of airworthiness; Bill Sutton, safety inspector of avionics; Bill Law, safety inspector of operations; and Tom Hutchins, safety inspector of operations. On direct examination, Inspector Bean testified that he and the other inspectors arrived in the early evening and worked into the early morning; they inspected the facility for unapproved parts and substandard maintenance practices. On cross-examination by counsel for Mr. McCulley's co-defendant, Inspector Bean stated that he and Hutchins conducted formal interviews of the Skyway employees and that the other inspectors may have conducted informal interviews. Mr. McCulley's counsel never questioned Inspector Bean about any of the interviews.

Following Inspector Bean, the government called Inspector Luna who, with respect to Count 26, testified that, during a late afternoon interview attended only by Mr. McCulley, the inspector, and co-defendant Bartlet, Mr. McCulley orally denied that Skyway used any but Lucas bearings in the Lucas starter generators. Department of Transportation Special Agent Michael Hamilton, another government witness who had joined the FAA investigation sometime after December 1992, corroborated Inspector Luna's testimony. Agent Hamilton testified that he spoke to Mr. McCulley in April 1995 and August 1995, and that Mr. McCulley admitted several times to using incorrect bearings and to lying to an FAA investigator, whose name Mr. McCulley could not remember, because he was afraid of losing his mechanic's license.

When Mr. McCulley testified, he denied that he ever spoke to Inspector Luna. He also denied making the incriminating statements to Special Agent Hamilton.

1. The name "Skyway" belonged to Midwest Airlines. In 1994, the contract under which Mesa used the name was not renewed and the name "Skyway" reverted back to Midwest. After that date, the Skyway division of Mesa operated under the name America West Express and moved its operations to Columbus, Ohio.

Instead, Mr. McCulley testified that on December 10, 1992, he spoke only to Inspector Bean and another inspector, later identified as Tom Hutchins. Mr. McCulley testified he told the inspectors that "at the time I did not realize that they were an unapproved bearing, but I took them for their word that it was an unapproved bearing at that time." He also testified that Inspectors Bean and Hutchins took notes during this interview and then asked him to sign the notes as verification of their accuracy, which he did. At the close of his direct examination, Mr. McCulley's counsel sought to introduce the inspectors' interview notes, which included the statement that "unknown number of starter generators have been installed on aircraft with incorrect bearings." Over the government's hearsay objection, the trial court permitted Mr. McCulley to read to the jury portions of the document, including the December 10 date, the 11:20 p.m. time that Mr. McCulley signed, and the names of the interviewers, Inspectors Bean and Hutchins. The district court, however, excluded as irrelevant the portion of the notes that stated "unknown number of starter generators have been installed on aircraft with incorrect bearings." Mr. McCulley argued that this omitted statement was relevant to impeach Inspector Luna's testimony that, earlier that same evening, Mr. McCulley had told him, outside the presence of Inspectors Bean and Hutchins, that Skyway never used anything but Lucas bearings.

## II

### DISCUSSION

■ We review a district court's evidentiary rulings for abuse of discretion. *Unit-*

*ed States v. Hunter*, 145 F.3d 946, 951 (7th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 266, 142 L.Ed.2d 219 (1998). We afford great deference to the district court's judgment. *See United States v. Shorter*, 54 F.3d 1248, 1260 (7th Cir.), *cert. denied,* 516 U.S. 896, 116 S.Ct. 250, 133 L.Ed.2d 176 (1995); *United States v. Glecier*, 923 F.2d 496, 503 (7th Cir.), *cert. denied,* 502 U.S. 810, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991). Mr. McCulley submits that the district court abused its discretion by excluding as irrelevant the portion of Mr. McCulley's adopted, written statement in which he acknowledged that an "unknown number of starter generators have been installed on aircraft with incorrect bearings." Mr. McCulley argues that the excluded statement was relevant and that it was not hearsay because he offered it, not for the truth of the matter asserted, but to impeach Inspector Luna. Mr. McCulley's theory is that the statement impeaches Inspector Luna because it shows a "factual inconsistency" between what he told Inspectors Bean and Hutchins and what he allegedly told Inspector Luna.

Mr. McCulley submits that he offered this excluded portion of the document in evidence not to prove that incorrect bearings were used in the starter generators, but to prove that he had made a statement to Bean and Hutchins on the night of December 10 that some starter generators had incorrect bearings. By establishing that he had made such a statement to these two inspectors, Mr. McCulley hoped to "impeach"[2] the testimony of Inspector Luna that, on the very same night, he had

---

**2.** Mr. McCulley contends that the statement is relevant to impeach Inspector Luna, but the statement does nothing to disprove Luna's testimony that Mr. McCulley had already lied to him in an earlier interview, before Mr. McCulley conceded to Bean and Hutchins that Skyway used incorrect bearings. Nor does the statement disprove Hamilton's testimony that, months later, Mr. McCulley admitted to him several times that he had lied to an FAA inspector on December 10 because he

was afraid of losing his mechanic's license. Therefore, because the statement does not contradict anything that Inspector Luna said, it does not serve to impeach him. *Cf. Simmons, Inc. v. Pinkerton's, Inc.*, 762 F.2d 591, 604 (7th Cir.1985) (explaining that impeachment by contradiction occurs when evidence is produced to demonstrate that part or all of a witness' testimony is incorrect; for example, an eyewitness to an auto accident testifies that the car that caused the accident was red,

made a contrary statement to Inspector Luna that only the correct Lucas bearings were used. In short, he wanted to argue to the jury that, because he had made that statement to Inspectors Bean and Hutchins, it was less likely that he had made a factually inconsistent statement to Inspector Luna.[3] In Mr. McCulley's view, the district court's ruling deprived the jury of relevant evidence on the issue of whether he made a false statement to Inspector Luna.

■ We do not believe that the district court committed reversible error in refusing to admit this statement. At the outset, we believe that the statement at issue that was excluded from the proffered document is most accurately characterized, for purposes of determining its admissibility, as a statement of Mr. McCulley's. Rule 801(a) of the Federal Rules of Evidence defines a "statement" to include a "written assertion ... if it is intended by the person as an assertion." Although originally written by the inspectors during their interview with him, the document was signed by Mr. McCulley and, by his own admission, adopted as his own.

■ Mr. McCulley sought to introduce this document to establish that the interview recorded there actually took place, and to confirm that, on that occasion, he had told Inspectors Bean and Hutchins that improper parts were used during the interview. As such, the document constitutes hearsay. *See* Fed. R.Evid. 801(c) (" 'Hearsay' is a statement, other than one made by the declarant

while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); *United States v. Ricketts*, 146 F.3d 492, 497 (7th Cir.1998); *United States v. Heitzinger*, 659 F.2d 761, 763 (7th Cir.1981). Mr. McCulley has not raised any hearsay exception that could apply to this case.[4]

In essence, Mr. McCulley attempted to bolster impermissibly his trial testimony by the introduction of the statement in question. There was no ground for the admission of the statement on that basis. At trial, Mr. McCulley testified that he told Inspectors Bean and Hutchins that "at the time I did not realize that [Consolidated bearings] were an unapproved bearing, but I took them for their word that it was an unapproved bearing at that time." He then sought to offer his verified statement from the inspectors' interview notes, that an "unknown number of starter generators have been installed on aircraft with incorrect bearings," to corroborate his testimony and, consequently, to counter Inspector Luna's contrary assertion. It is, of course, improper to admit a previous statement for the mere purpose of bolstering a statement made at trial. *See United States v. McKinney*, 954 F.2d 471, 478 (7th Cir.) (stating that " '[t]o bolster a witness's credibility in advance is improper' " (quoting *United States v. LeFevour*, 798 F.2d 977, 983 (7th Cir.1986))), *cert. denied*, 506 U.S. 1023, 113 S.Ct. 662, 121 L.Ed.2d 587 (1992); *see also* Fed.R.Evid. 608(a)(2). Here, the government never had suggested that his statement was a recent fabrica-

and the witness is impeached with other evidence that the car actually was yellow).

3. No one contests the truth of the contents of the statement to Inspectors Bean and Hutchins—that incorrect bearings were used. Therefore, the statement to Luna, if made, was false and the statement to Inspectors Bean and Hutchins was true.

4. For instance, under Federal Rule of Evidence 801(d)(1), a prior statement of a testifying witness can be admitted at trial if the statement is consistent with the trial testimony of the witness and is offered to rebut an

express or implied charge against the witness of recent fabrication or improper influence or motive. However, the government never suggested that his statement was a recent fabrication. Indeed, it admitted that such a truthful statement had been made. In fact, the government argued that Mr. McCulley had offered the statement simply to underscore or to bolster his testimony.

Nor does the statement qualify as a past recollection recorded. *See* Fed.R.Evid. 803(5).

tion and, indeed, had admitted that such a statement had been made.

 Under these circumstances, we certainly cannot say that the trial judge abused his discretion in excluding the statement. In any event, even if such an abuse of discretion had taken place, we would have to say that the error was harmless. There was no dispute that Mr. McCulley had made the statement that he now asserts he had made. The government asserted that Mr. McCulley had made such an admission in its cross-examination of him and, indeed, Mr. McCulley's counsel argued to the jury that such a statement had been made. In fact, the defense's submission to the jury was that only one statement was made by Mr. McCulley and that that statement was the one made to Inspectors Bean and Hutchins.

Moreover, the case against Mr. McCulley on this count of the indictment was strong. Inspector Luna had testified that the false statement had been made; Agent Hamilton had testified that, in 1995, Mr. McCulley had admitted that he had made the false statement. Mr. McCulley's own testimony as to what he told Inspectors Bean and Hutchins easily could have been interpreted as equivocal by the jury.

### Conclusion

We cannot say that the district court abused its discretion in excluding the portions of the written statement at issue. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.